BOWSER v. JACOBS

MILLER v. REDD

PAYNE v. BLACK

Opinion of the Court

1. Automobiles—Motor Vehicle Accident Claims Act—Purpose.
   The purpose of the Motor Vehicle Accident Claims Act is to render relief to those who suffer damage attributable to uninsured motorists and who have no meaningful recovery (MCLA § 257.1101 et seq.).

2. Statutes—Classification—Legislative Discretion.
   The Legislature is given great latitude in drawing classifications to effect social, economic, or regulatory legislation.

3. Automobiles—Motor Vehicle Accident Claims Act—Workmen's Compensation—Statutes—Constitutional Law.
   The section of the Motor Vehicle Accident Claims Act which prevents those covered by workmen's compensation from applying to the Motor Vehicle Accident Claims Fund for payment for damages after being injured by an uninsured motorist is unconstitutionally discriminatory, because in several other instances the act allows other persons to reach alternative indemnities without prohibiting recovery from the fund (MCLA § 257.1101 et seq.).

Dissent by Levin, J.

4. Statutes—Classification—Constitutional Law.
   *A classification in a statute is not an invidious discrimination merely because the classification lacks the force of compelling*

---

References for Points in Headnotes

[1, 3, 7–11, 14, 15] 7 Am Jur 2d, Automobiles and Highway Traffic § 301.
   Unsatisfied claim and judgment statutes; Validity and construction of provisions for deduction from awards of sums collectible by claimant from other sources. 7 ALR3d 836.
[2, 4–8, 12–15] 16 Am Jur 2d, Constitutional Law § 494 et seq.
[16] 16 Am Jur 2d, Constitutional Law § 151.

*logic or is incongruous; unless the classification is invidious, the courts may not interfere with the legislative judgment.*

5. STATUTES—LEGISLATIVE JUDGMENTS.

*The courts have not been commissioned to substitute their concepts of fairness and common sense for the practical legislative judgments and compromises which must be made in order to enact innovative legislation addressed to the social problems of our times; if the courts, when passing on the constitutionality of such statutes, ignore the need for rough accomodations, the courts may discourage the Legislature from dealing with a problem at all.*

6. CONSTITUTIONAL LAW—STATUTES—CLASSIFICATION—EQUAL PROTECTION—CONSTITUTIONAL STANDARD.

*A classification does not violate this state's Equal Protection clause if there is a reasonable basis for the classification; the reasonable basis test must be used because it is the most recent pronouncement of the United States Supreme Court and because the Michigan Supreme Court has previously declared that the Michigan Equal Protection clause means the same thing as the Federal Equal Protection clause.*

7. AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS FUND—WORKMEN'S COMPENSATION—CLASSIFICATION—CONSTITUTIONAL LAW.

*The statutory classification that prevents those covered by workmen's compensation from applying to the Motor Vehicle Accident Claims Fund for payment after being involved in an automobile accident with an uninsured motorist must be sustained if there is a reasonable basis for the classification; the Court of Appeals must, in light of the decisions of the United States and Michigan Supreme Courts, proceed on the assumption that it may not balance the competing interests, comparing the relative importance to the discriminated class of the governmental benefit denied and the asserted state interest advanced in support of the classification (MCLA § 257.1101 et seq.).*

8. AUTOMOBILES — MOTOR VEHICLE ACCIDENT CLAIMS ACT — WORKMEN'S COMPENSATION — CLASSIFICATION — REASONABLENESS — BURDEN OF PROOF.

*The state, not the claimant, has the burden of showing the reasonableness of the classification precluding those entitled to workmen's compensation from recovering from the Motor Vehicle Accident Claims Fund on account of an accident with an uninsured motorist; the burden is on the state because of*

the universality of the social problem sought to be dealt
with by the Motor Vehicle Accident Claims Act, the omni-
presence of the risk ameliorated, the breadth of the general
right of recovery—all state residents, and the narrow exclu-
sion—those residents injured in the course of their employ-
ment so that they are covered by workmen's compensation
(MCLA § 257.1101 et seq.).

9. AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS ACT—INSURANCE
CODE—UNINSURED MOTORIST COVERAGE—PURPOSE.
 Motor Vehicle Accident Claims Act and the act amending the
 insurance code providing that any policy protecting a person
 from personal injury also protects against loss caused by an
 uninsured motorist unless uninsured motorist protection has
 been rejected are in pari materia; the amendment to the
 insurance code sought to encourage the purchase of uninsured
 motorist coverage and, thus, reduce the number of claims
 against the Motor Vehicle Accident Claims Fund.

10. AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS ACT—WORK-
MEN'S COMPENSATION—EXCLUSION FROM RECOVERY—PURPOSE.
 The legislative purpose in barring those covered by workmen's
 compensation from recovery from the Motor Vehicle Accident
 Claims Fund for damages caused by an uninsured motorist
 was not based on the policy that the employees already had
 an adequate minimum source of recovery, because the only
 group having a collateral source of recovery barred from
 proceeding against the fund were injured employees entitled
 to workmen's compensation (MCLA § 257.1101 et seq.).

11. AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS ACT—WORK-
MEN'S COMPENSATION—EXCLUSION FROM RECOVERY—PURPOSE.
 The Legislature's purpose in prohibiting employees who are
 covered by workmen's compensation from suing the Motor
 Vehicle Accident Claims Fund for injuries caused by uninsured
 motorists was simply to reduce the fund's exposure by elimina-
 ting a readily identifiable group of potential claimants who,
 arguably, were in less need of protection (MCLA § 257.1101
 et seq.).

12. STATUTES—CLASSIFICATION—CONSTITUTIONAL LAW.
 The state may for sound reasons of public policy grant benefits
 to some and deny like benefits to others.

13. STATUTES—CLASSIFICATION—RATIONAL BASIS.
 A classification in a statute which does not foster the objective
 which impelled it is not rational.

14. Automobiles—Motor Vehicle Accident Claims Act—Workmen's Compensation—Exclusion from Recovery—Reasonableness.

The reasonableness of the classification barring claims for damages from uninsured motorists against the Motor Vehicle Accident Claims Fund by employees entitled to workmen's compensation must be judged in the light of the objective sought to be served by the classification—the preservation of the fund's financial soundness; if the classification bears no reasonable relationship to the purpose of protecting the fund's actuarial soundness, the classification is irrational.

15. Automobiles—Motor Vehicle Accident Claims Act—Workmen's Compensation—Exclusion from Recovery—Reasonableness.

Actions questioning the constitutionality of the provision barring those covered by workmen's compensation from suing the Motor Vehicle Accident Claims Fund for injuries caused by uninsured motorists must be remanded for the taking of additional evidence, showing the fund's present financial condition, because the constitutionality of the provision depends on whether it is reasonably related to the preservation of the fund's actuarial soundness (MCLA § 257.1101 et seq.).

16. Statutes—Constitutional Law—Changed Conditions.

A change in facts, conditions, or circumstances may render unconstitutional a statute valid when enacted.

Appeals from Wayne, George E. Bowles, Horace W. Gilmore, and Thomas D. Roumell, JJ. Submitted Division 1 February 2, 1971, at Detroit. (Docket Nos. 8197, 8353, 8464.) Decided October 19, 1971.

Complaint by John Anthony Bowser against Paul E. Jacobs, Charles Furtaw, and the Secretary of State, as Director of the Motor Vehicle Accident Claims Fund, for damages for injuries received in an automobile accident with an uninsured motorist. Summary judgment granted defendant Secretary of State. Plaintiff appeals. (No. 8197.)

Complaint by Charles E. Miller, Jr., against James Redd for damages for injuries received in an automobile accident. The Secretary of State, as Director of the Motor Vehicle Accident Claims Fund, intervened as a defendant. Secretary of State's motion for summary judgment denied. The Secretary of State appeals. (No. 8353.)

Complaint by Dorothy Ann Payne against Harvey Black and Charles Black for damages for injuries received in an automobile accident. The Secretary of State, as Director of the Motor Vehicle Accident Claims Fund intervened as a defendant. Secretary of State's motion for summary judgment denied. The Secretary of State appeals. (No. 8464.)

Cases consolidated. Reversed and remanded for trial as to plaintiff Bowser; remanded for trial as to plaintiffs Miller and Payne.

*Sheldon L. Miller* (*Theodore M. Rosenberg*, of counsel), for plaintiffs.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *Joseph B. Bilitzke* and *Carl K. Carlsen*, Assistants Attorney General, and *John F. Potvin*, Special Assistant Attorney General, for defendant Secretary of State.

Before: Lesinski, C. J., and R. B. Burns and Levin, JJ.

Lesinski, C. J. In the cases before us we are squarely faced with determining the constitutionality of that portion of the Motor Vehicle Accident Claims Act (hereinafter the Act) which prevents those covered by workmen's compensation from

applying to the Motor Vehicle Accident Claims Fund (hereinafter the Fund) for payment. MCLA § 257.1101, *et seq.* (Stat Ann 1968 Rev § 9.2801, *et seq.*).

To facilitate adjudication of this question, this Court ordered that the three causes captioned above be consolidated. All of the cases presently before us are factually identical: plaintiffs are taxicab operators who, while in the course and scope of their employment, were injured in automobile accidents allegedly caused by uninsured motorists. The plaintiffs brought the instant actions against the various uninsured motorists and the Secretary of State in his representative capacity as administrator of the Fund. In each of the cases, the Secretary, relying on § 29 of the Act, sought dismissal of the action against the Fund by way of motion for summary judgment. Plaintiffs resisted these motions by contending that the section was unconstitutional. In the *Bowser* case, the trial court upheld § 29 as constitutional and granted the Secretary's motion. In *Miller* and *Payne,* the trial courts struck down the section as violative of the Equal Protection clause of the Federal and State Constitutions; these lower courts denied the Secretary's motions with prejudice.

Section 29 of the Act bars the recovery by an injured person from the Fund if the claimant is covered by workmen's compensation with respect to such injury.[1] Plaintiffs assert that this statutory classification is unreasonable, arbitrary, and contravenes the Equal Protection clause. The Secretary's position is that since the purpose of the Act

---

[1] New Jersey has a similar provision in its statute. NJ Stat Ann § 39:6–70. Extensive research, however, has failed to uncover any decision which addresses itself to the constitutionality, *vel non,* of such a provision.

is to render relief to those who suffer damage attributable to uninsured motorists (and who have no meaningful recovery), the Legislature's classification prohibiting those covered by workmen's compensation from proceeding against the Fund is a reasonable, constitutionally permissible distinction.

We accept the Secretary's statement of the purpose of such legislation. This interpretation is given weight by reference to decisions from the courts of other states. See, for example, *Askey* v. *General Accident Fire & Life Assurance Corp.* (1968), 30 App Div 2d 632 (290 NYS2d 759), *aff'd* (1969), 24 NY2d 937 (302 NYS2d 576); *Garcia* v. *Motor Vehicle Accident Indemnification Corp.* (1964), 41 Misc 2d 858 (246 NYS2d 841); *Corrigan* v. *Gassert* (1958), 27 NJ 227 (142 A2d 209); *Dixon* v. *Gassert* (1958), 26 NJ 1 (138 A2d 14); *Douglas* v. *Harris* (1961), 35 NJ 270 (173 A2d 1); *Proskurnja* v. *Elder* (1962), 73 NJ Super 466 (180 A2d 200); *Tschider* v. *Burtts* (ND, 1967), 149 NW2d 710. Given this objective, we must examine the statutory differentiation presently challenged in light of the purposes of the legislative enactment. *Fox* v. *Employment Security Commission* (1967), 379 Mich 579, 588.

It remains axiomatic that the Legislature is to be given great latitude in drawing classifications to effect social, economic, or regulatory legislation. *Fox* v. *Employment Security Commission, supra; Levy* v. *Louisiana* (1968), 391 US 68 (88 S Ct 1509, 20 L Ed 2d 436). This holds true for uninsured or unsatisfied judgment fund statutes as well. See *Allied American Mutual Fire Insurance Co.* v. *Commissioner of Motor Vehicles* (1959), 219 Md 607 (150 A2d 421). See, also, *Naudzius* v. *Lahr* (1931), 253 Mich 216, 223.

We would be persuaded by the Secretary's argument, were it not for the fact that, in several other instances, the Act allows other persons to reach alternative indemnities without prohibiting recovery from the Fund.

The availability of *any* workmen's compensation totally bars an injured party from looking to the Fund for recovery of any amount.[2] But § 22(4) of the Act, MCLA § 257.1122(4) (Stat Ann 1968 Rev § 9.2822[4]), permits the beneficiaries of a life insurance policy to recover from the Fund for the death of a person caused by an uninsured motorist. Certainly it may be said that the existence of life insurance could adequately compensate survivors for their loss. The Act allows these persons to recover and, incongruously, refuses an employee to look to the Fund for relief. Furthermore, § 23(2) of the Act, MCLA § 257.1123(2) (Stat Ann 1968 Rev § 9.2823[2]), permits one to apply for payment out of the Fund even after exhausting one's coverage on a private policy of automobile insurance (presumably uninsured motorist coverage existing in many such policies).

In *Green* v. *Blicharski* (1971), 32 Mich App 15, plaintiff was injured by an uninsured motorist. Plaintiff owned a private automobile insurance policy with uninsured motorist coverage. Plaintiff's insurer paid $7,250 to plaintiff after plaintiff and the insurer arbitrated the claim. Plaintiff then sought damages from the uninsured motorist and the Fund; plaintiff obtained a judgment for $16,000.

---

[2] For example, a reading of MCLA § 257.1129 (Stat Ann 1968 Rev § 9.2829) indicates that an employee who suffers $50,000 in damages inflicted upon him by an uninsured motorist and to whom a workmen's compensation award with a present value of $20,000 is made, is unable to sue the Fund, regardless of the $30,000 in damages which would go uncompensated.

This Court held in that case that the Secretary was liable for the excess of the judgment over the payment made by the insurer. However, had plaintiff in the *Green* case received a workmen's compensation award of $7,250, he would have been unable to secure any amount from the Fund in excess of that paid to him by the employer or his workmen's compensation carrier.

The legislative aim of this social legislation, as noted above, is to compensate those injured by uninsured tortfeasors who would otherwise have had no source of recovery. But, as we have seen, some persons who have available avenues of recovery are permitted to reach the Fund but injured employees are not. We are constrained to agree that the Legislature has arbitrarily carved out this class from those who have recourse to the Fund. This classification is one made without the force of compelling logic; we find it unconstitutionally discriminatory.

In *Fox* v. *Employment Security Commission, supra,* several similar examples of discrimination were challenged. In that case, weekly unemployment benefits were denied by statute to those receiving total permanent, partial permanent, or temporary disability workmen's compensation payments as well as to those receiving weekly workmen's compensation benefits. However, the statute permitted recipients of death, workmen's compensation benefits, "specific loss" benefits, and those who had elected to accept their workmen's compensation award in a "lump sum" to receive unemployment compensation. Noting that the object of the statute was to preclude the possibility of duplication of benefits, the Court held the distinctions to be arbitrary since some persons were able, because of the

statutory scheme, to reach unemployment benefits and others similarly situated were not.[3]

We reverse and remand in the *Bowser* case with an order to the trial court to proceed to trial for a determination of liability.

We remand in the *Miller* and *Payne* cases with orders to try the cases so as to fix liability.

No costs, a public question being involved.


R. B. BURNS, J., concurred.


LEVIN, J. (*dissenting*). Although I am in complete sympathy with the result reached by my colleagues, on the record presented it is beyond our authority to declare the challenged legislative classification unconstitutional.

Time and again we have been instructed that "the Legislature may recognize degrees of evil and adapt its legislation accordingly" (*Truax* v. *Raich* [1915], 239 US 33, 43 [36 S Ct 7, 60 L Ed 131]), that it need not cover "the whole field of possible abuses" (*Patsone* v. *Pennsylvania* [1914] 232 US 138, 144 [34 S Ct 281, 58 L Ed 539]), and that *"logical* appropriateness of the inclusion or exclusion of objects or persons is not required.  *  *  *  At any rate, exact wisdom and nice adaptation of remedies are not required by the Fourteenth Amendment" (*Heath & Milligan Manufacturing Company* v. *Worst* [1907], 207 US 338, 354, 355 [28 S Ct 114, 52 L Ed 236]). Accord: *Naudzius* v. *Lahr* (1931), 253 Mich 216; *Mutchall* v. *City of Kalamazoo* (1948), 323 Mich 215, 227; *Tracer* v. *Bushre* (1968), 381 Mich 282, 291; *People* v. *Chapman* (1942), 301 Mich 584, 599.

---

[3] We need not pass upon the question of whether declaring § 29 unconstitutional grants the employer or his workmen's compensation carrier a derivative cause of action.

A "lack of abstract symmetry does not matter. The question is a practical one". *Patsone* v. *Pennsylvania, supra,* p 144. Merely because a classification may lack, as my colleagues in this case argue, "the force of compelling logic" or is "incongruous" does not mean that it accomplishes an "invidious discrimination". And, unless the challenged discrimination is invidious, we may not properly interfere with the legislative judgment. *Wolodzko* v. *Wayne Circuit Judge* (1969), 382 Mich 528, 534 (discussed in fn 6, *infra*) ; see, also, cases cited and discussed in part I, *infra.*

Logic and inductive reasoning can carry one down a false path:

(a) The majority points out that § 22(4) of the Motor Vehicle Accident Claims Act[1] provides that amounts recoverable under a policy of life insurance or under any policy, contract or agreement providing for the payment of any hospital or medical expenses are not to be deducted in determining the liability of the Motor Vehicle Accident Claims Fund. The majority use this preferential treatment of such insurance recoveries as an argument to buttress their conclusion that the challenged classification—distinguishing between persons injured by uninsured motorists based on whether they are entitled to receive workmen's compensation benefits on account of their injuries—is illogical, without appreciating where their logic takes them. Surely the fund—which the Legislature clearly intended would ordinarily be liable only to the extent the damages are in "excess" of amounts forthcoming from other sources of recovery—is not now to be placed on a par with all others who are potentially liable in order to achieve, if that is possible, an

---

[1] MCLA § 257.1122 *et seq.* (Stat Ann 1968 Rev § 9.2822 *et seq.*)

abstract and logical symmetry for all persons injured by uninsured vehicles in relation to those of such injured persons who are entitled to recover life insurance or hospital or medical expense insurance proceeds on account of their damages.

(b) Nor should we be troubled that those injured persons who carry uninsured motorist insurance protection may also recover from the fund if their damages exceed the amounts received from their own insurers. As observed in *Oatis* v. *Dairyland Insurance Company* (1969), 20 Mich App 367, 372, "with the statute the Legislature has encouraged the purchase of uninsured motorist coverage". If it were not possible to recover from the fund any excess of the damages suffered over the amount recovered from one's own insurer, there would be little incentive to purchase uninsured motorist coverage. Informed policyholders would reject uninsured motorist coverage secure in the knowledge that if they were damaged by an uninsured motorist they could proceed against the fund and recover all that they could recover were they to purchase uninsured motorist coverage.

(c) Persons who are injured by motorists *who are insured* for $10,000 of liability cannot recover at all from the fund. Surely we are not prepared to declare that limitation unconstitutional because persons who are injured by uninsured motorists and who carry $10,000 uninsured motorist protection may proceed against both their insurers *and* against the fund.

(d) Under the majority's decision employees injured by uninsured motorists can now collect from the fund even though they are entitled to recover workmen's compensation benefits, without, it would appear, reduction on account of the workmen's com-

pensation benefits paid (see part VI, *infra*).  This creates an "illogical" inequity between employees injured by uninsured motor vehicles and employees injured by insured vehicles or in some other manner as regards employers' rights of subrogation in respect to amounts recoverable by employees from third-party tortfeasors.

It is apparent that we are not more likely than the Legislature to achieve a fully harmonious symmetry in legislation.  Before legislation can properly be declared unconstitutional we must be able to point to a shortcoming of more overriding significance than a mere lack of "compelling logic" or "incongruity".  We have not been commissioned to substitute our concepts of fairness and common sense for the practical legislative judgments and compromises which must be made in order to enact innovative legislation addressed to the social problems of our times.  If we ignore the need for rough accommodations we may well discourage a Legislature, fearful that we will extend its work into areas beyond its intention, from dealing with a problem at all.

The plaintiffs in these actions, consolidated on appeal, are taxicab drivers who suffered injuries in automobile collisions that occurred in the course of their employment by a cab company.  Workmen's compensation benefits were paid to them.

They commenced these actions against the drivers and owners of the other vehicles involved in the collisions.  And, claiming that the other vehicles were uninsured, they served the Secretary of State as director of the Motor Vehicle Accident Claims Fund.

The Secretary of State intervened as a party defendant and moved separately in each action for

summary judgment on the basis of § 29 of the act
establishing the fund:

> "Any person covered with respect to such injury
> or death by workmen's compensation law or the
> personal representative of such person shall not be
> permitted to recover from the fund except for prop-
> erty damage."[2]

The motions were heard by three different circuit
judges; a summary judgment was entered in favor
of the fund in *Bowser* v. *Jacobs*, #8197, and denied
in *Miller* v. *Redd*, #8353, and *Payne* v. *Black*,
#8464.

The question presented is whether the legislative
classification set forth in § 29, barring a person
covered under the workmen's compensation law from
seeking benefits from the accident claims fund, de-
prives those in the excluded class of the equal
protection of the laws.

Although I cannot subscribe to the view of my
colleagues that lack of "compelling logic" or "in-
congruity" in the challenged classification renders
it unconstitutional on its face, the classification may,
indeed, in the total factual context, be unconstitu-
tional. For reasons set forth at length in this dis-
senting opinion I would hold that the constitution-
ality of the classification cannot be determined on
the record presented and remand for the taking of
additional evidence and further fact finding.

## I.

The Michigan Supreme Court has declared that
the scope and nature of the right to the equal pro-
tection of the laws is the same under the Michigan
Constitution (Const 1963, art 1, § 2) as it is under

---

[2] MCLA § 257.1129 (Stat Ann 1971 Cum Supp § 9.2829).

the Fourteenth Amendment to the United States Constitution.[3]

Our Supreme Court has adopted and frequently reiterated[4] as the standard by which a statutory classification is to be tested, when challenged as a denial of equal protection of the laws, principles summarized in 1911 by the United States Supreme Court in *Lindsley* v. *Natural Carbonic Gas Company* (1911), 220 US 61, 78, 79 (31 S Ct 337, 55 L Ed 369), a case where the Court upheld the validity of classifications in an act prohibiting drilling for natural mineral waters.

In *Lindsley* the Court declared that the state may exercise a power to classify in the adoption of "police laws" and that a classification is not invalid merely because it results in some inequality in practice. Only those classifications which have no "reasonable basis and, therefore, are purely arbitrary" deny the equal protection of the laws. A court will assume the existence of any state of facts that reasonably can be conceived which will sustain the classification and he who assails the classification must carry the burden of proving that it does not rest upon any reasonable basis, but is essentially arbitrary.[5]

---

[3] *Naudzius* v. *Lahr* (1931), 253 Mich 216, 222; *Gauthier* v. *Campbell, Wyant & Cannon Foundry Company* (1960), 360 Mich 510, 514.

[4] See *Naudzius* v. *Lahr, supra,* pp 222, 223; *Gauthier* v. *Campbell, Wyant & Cannon Foundry Company, supra,* p 514.

[5] "1. The equal protection clause of the 14th Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden

More recently, the Michigan Supreme Court reaffirmed its assimilation of the Federal "reasonable basis" standard when it adopted a rearticulation of that standard by the United States Supreme Court in *McGowan* v. *Maryland* (1961), 366 US 420, 425, 426 (81 S Ct 1101, 6 L Ed 2d 393), a case where the classifications in a Sunday closing law containing numerous exemptions were sustained.[6]  As earlier indicated, still another formulation by the United States Supreme Court of the reasonableness basis standard has been adopted by our Supreme Court: "The prohibition of the equal protection clause goes no further than the invidious discrimination."[7]

---

of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." *Lindsley* v. *Natural Carbonic Gas Company* (1911), 220 US 61, 78, 79 (31 S Ct 337, 55 L Ed 369).

[6] "The standards under which this proposition is to be evaluated have been set forth many times by this Court. Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan* v. *Maryland* (1961), 366 US 420, 425, 426 (81 S Ct 1101, 6 L Ed 2d 393), quoted approvingly in *Wolodzko* v. *Wayne Circuit Judge* (1969), 382 Mich 528, 533, 534.

In *Wolodzko* v. *Wayne Circuit Judge* (1969), 382 Mich 528, 533, 534, the Michigan Supreme Court sustained the validity of a provision in the insurance code which permits an insurance company authorized to do business in this state to obtain a stay of execution of the entire amount of a judgment against one of its insureds even though the amount of the insurance company's liability under the policy is less than the amount of the judgment. The Court declared that "[t]he desirability of carrying liability insurance for the protection of the public, in some amount, and the encouragement thereof which [the statutory provision] exhibits" is a nonarbitrary reason for the special treatment provided insurance carriers.

[7] *Williamson* v. *Lee Optical of Oklahoma, Inc.* (1955), 348 US 483, 489 (75 S Ct 461, 99 L Ed 563), quoted approvingly in *Wolodzko* v. *Wayne Circuit Judge, supra*, p 534, fn 4. Similarly, see *Levy* v. *Louisiana Through the Charity Hospital of Louisiana at New Orleans Board of Administrators* (1968), 391 US 68, 71 (88 S Ct 1509, 20 L Ed 2d 436).

## II.

The *Lindsley* doctrine that a classification chal-
lenged as invidious will be upheld if it rests upon a
reasonable basis—if it is not invidious or arbitrary
—and that a person challenging the classification
must show that no state of facts can reasonably be
hypothesized that would justify the classification has
in recent years been re-examined by the United
States Supreme Court.

In a considerable number of cases the Court has
declared that the "any-rationale-basis-for-the-classi-
fication" analysis, utilized in appraising legislation
regulating business or industry, does not circum-
scribe the inquiry where the classification is "sus-
pect" or the discrimination concerns a "fundamental
right" and that in such a case the burden, a "very
heavy burden of justification", must be carried by
the state contending that the legislation is valid.[8]

In *Williams* v. *Rhodes* (1968), 393 US 23, 30 (89
S Ct 5, 21 L Ed 2d 24), a voting rights case, the
Court moved toward a more generalized test, one
which would require a reviewing court to weigh the
interest of the individual and the interest of the

---

[8] *Loving* v. *Virginia* (1967), 388 US 1, 8, 9 (87 S Ct 1817, 18 L
Ed 2d 1010) (statute prohibiting a white person from marrying any
person other than a white person is invalid). Similarly, see *Skinner*
v. *Oklahoma* (1942), 316 US 535, 541 (62 S Ct 1110, 86 L Ed 1655)
(statute providing for sterilization of habitual criminals held invalid;
"strict scrutiny" of the classification in a sterilization law is essen-
tial); *Korematsu* v. *United States* (1944), 323 US 214, 216 (65 S
Ct 193, 89 L Ed 194) (exclusion of citizens of Japanese extraction
from certain areas of the west coast at the beginning of the war with
Japan held to have been a valid exercise of the war power; but the
Court observed: "All legal restrictions which curtail the civil rights
of a single racial group are immediately suspect. * * * [T]he
courts must subject them to the most rigid scrutiny."); *Harper* v.
*Virginia State Board of Elections* (1966), 383 US 663, 670 (86 S
Ct 1079, 16 L Ed 2d 169) (poll tax held invalid; "Where fundamental
rights and liberties are asserted under the Equal Protection Clause,
classifications which might invade or restrain them must be closely
scrutinized and carefully confined.")

state, making the matter turn on the "importance" to each of the interests at stake:

"It is true that this Court has firmly established the principle that the Equal Protection Clause does not make every minor difference in the application of laws to different groups a violation of our Constitution. But we have also held many times that 'invidious' distinctions cannot be enacted without a violation of the Equal Protection Clause. In determining whether or not a state law violates the Equal Protection Clause, *we must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification.*" (Emphasis supplied.)[9]

In *Shapiro* v. *Thompson* (1969), 394 US 618, 634, 638 (89 S Ct 1322, 22 L Ed 2d 600), in ruling that welfare recipients are denied equal protection of the laws by a one-year residency classification, which had the effect of impinging their constitutional right to travel freely from state to state, the Court declared:

"At the outset, we reject appellants' argument that a mere showing of a rational relationship between the waiting period and these four admittedly permissible state objectives will suffice to justify the classification. See *Lindsley* v. *Natural Carbonic Gas Company* [1911], 220 US 61, 78 [31 S Ct 337, 55 L Ed 369, 377]; *Flemming* v. *Nestor* [1960], 363 US 603, 611 [80 S Ct 1367, 4 L Ed 2d 1435, 1444]; *McGowan* v. *Maryland* [1961], 366 US 420, 426 [81 S Ct 1101, 6 L Ed 2d 393, 399]. The waiting-period provision denies welfare benefits to otherwise eligible applicants solely because they have recently moved into the jurisdiction. But in moving from

---

9 Similary, see *Kramer* v. *Union Free School District No.* 15 (1969), 395 US 621 (89 S Ct 1886, 23 L Ed 583).

state to state or to the District of Columbia appellees were exercising a constitutional right, and any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional. *Cf. Skinner* v. *Oklahoma* [1942], 316 US 535, 541 [62 S Ct 1110, 86 L Ed 1655, 1660]; *Korematsu* v. *United States* [1944], 323 US 214, 216 [65 S Ct 193, 89 L Ed 194, 198]; *Bates* v. *Little Rock* [1960], 361 US 516, 524 [80 S Ct 412, 4 L Ed 2d 480, 486]; *Sherbert* v. *Verner* [1963], 374 US 398, 406 [83 S Ct 1790, 10 L Ed 2d 965, 971]." (Emphasis by the Court.)

Later the Court said:

"Since the classification here touches on the fundamental right of interstate movement, its constitutionality must be judged by the stricter standard of whether it promotes a *compelling* state interest." (Emphasis by the Court.)

However, more recently, in *Dandridge* v. *Williams* (1970), 397 US 471 (90 S Ct 1153, 25 L Ed 2d 491), *reh den* 398 US 914 (90 S Ct 1684, 26 L Ed 2d 80), the United States Supreme Court, in upholding the validity of a regulation of the Maryland Department of Public Welfare placing an absolute limit of $250 per month on the amount of a grant under the AFDC program regardless of the size of the family and its actual need, reiterated its adherence to the traditional reasonable basis standard enunciated in *Lindsley,* acknowledging as it did so that there was a "dramatically real factual difference" between cases in which that standard was evolved—mainly cases concerning "State regulation of business or industry"—and the case there presented which concerned the administration of public welfare assistance and hence "the most basic economic

needs of impoverished human beings". The Court declared:

"*In the area of economics and social welfare,* a state does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis', it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality'. *Lindsley* v. *Natural Carbonic Gas Co., supra,* p 78." (Emphasis supplied.) *Dandridge* v. *Williams, supra,* p 485.

Mr. Justice Harlan concurred with the reservation that, in his opinion, the standard of rationality of classification governs in all cases without regard to the nature of the classification or interest involved with the sole exception of racial classifications, where a higher standard limits legislative action, and, thus, he would not suggest that a different standard might apply if the interest involved was not in the area of "economics and social welfare."[10]

Mr. Justice Marshall and Mr. Justice Brennan, in dissent, chided the majority for not explaining why a classification in "social welfare" legislation should be judged by the same standard developed in "economic" regulation cases (p 520): "We are told no more than that this case falls in 'the area of economics and social welfare', with the implication that from there the answer is obvious". They expressed the view that the distinction evolving in the equal protection cases between "fundamental" rights and other kinds of rights as to the standard by which the validity of a classification would be judged was not workable and was not valid. They

---

[10] *Dandridge* v. *Williams* (1970), 397 US 471, 489, 490 (90 S Ct 1153, 25 L Ed 2d 491), *reh den* 398 US 914 (90 S Ct 1684, 26 L Ed 2d 80), Harlan, J., concurring.

said that the "equal protection analysis of this case is not appreciably advanced by the *a priori* definition of a 'right', fundamental or otherwise. Rather [they said, relying on *Williams* v. *Rhodes, supra*] concentration must be placed upon the character of the classification in question, the relative importance to individuals in the class discriminated against of the governmental benefits that they do not receive, and the asserted State interests in support of the classification".[11]

In its latest pronouncement on the subject, *Graham* v. *Richardson* (1971), 403 US 365, 371, 372 (91 S Ct 1848, 1852; 29 L Ed 2d 534, 541), in holding violative of the Equal Protection clause state statutes denying welfare benefits to resident aliens or to aliens who have not resided in the United States for a specified number of years, the Court declared:

"Under traditional equal protection principles, a state retains broad discretion to classify as long as its classification has a reasonable basis. [Citations omitted.] This is so in 'the area of economics and social welfare.' *Dandridge* v. *Williams* (1970), 397 US 471, 485. But the Court's decisions have established that classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny. Aliens as a class are a prime example of a 'discrete and insular' minority (see *United States* v. *Carolene Products Co.* [1938], 304 US 144, 152, 153, n. 4 [58 S Ct 778, 783, 784; 82 L Ed 1234, 1241, 1242]) for whom such heightened judicial solicitude is appropriate."

It is apparent that the traditional test, stated in *Lindsley* in a business regulation case, has not been

---

[11] *Dandridge* v. *Williams, supra,* pp 520, 521, Marshall, J., dissenting.

found adequate to deal with the many varied kinds of statutes and regulations with which the courts are now confronted. No one verbal formulation is likely to be adequate to judge and decide all cases.

The statements by the Michigan Supreme Court that the Equal Protection clause means the same thing in the Michigan Constitution as it means in the Federal Constitution were made at times when there was complete unanimity that the relatively simplistic *Lindsley* test would permit apropriate resolution of all cases likely to be presented. Now that other standards have been propounded and applied in some cases by the United States Supreme Court itself and there is a running debate in that Court as to the standard or standards to be applied in particular cases, the Michigan Supreme Court might well conclude that it has a choice to make between the competing formulations.

However, until the Michigan Supreme Court decides, in the application of the Equal Protection clause in the Michigan Constitution, to explicate and develop diversified standards unconstrained by the Federal standards, we must, controlled as we are by the doctrine of *stare decisis*,[12] attempt to apply the most recent pertinent pronouncement of the United States Supreme Court as best we can. And that would appear to be the statement in *Dandridge* v. *Williams.* It would seem that if the traditional reasonable basis test governs the propriety of a regulation controlling the distribution of state funds to welfare recipients, that a test no more restrictive of state legislative power to classify would be applied by the United States Supreme Court in determining the propriety of an exception in a state

---

[12] See *Abendschein* v. *Farrell* (1969), 382 Mich 510, *affirming Abendschein* v. *Farrell* (1968), 11 Mich App 662; *Maxwell* v. *Maxwell* (1969), 15 Mich App 607, 614; *Hollerud* v. *Malamis* (1969), 20 Mich App 748, 758.

statute providing indemnification for claims against uninsured motorists.

Thus, in deciding this case we must proceed on the assumption that we may not balance the competing interests, comparing the relative importance to the class discriminated against of the governmental benefit denied, and the asserted state interest advanced in support of the classification. We must sustain the classification if there is a reasonable basis for it.

While the Supreme Court in *Dandridge* states the governing test in the same language as does *Lindsley,* it is significant that in *Dandridge,* as in *Shapiro* v. *Thompson,* the Court did not require the persons challenging the classification to negative any reasonably conceivable state of facts that would sustain the classification as reasonable. The Court scrutinized the justification of the regulation advanced by the state, and finding it substantial concluded that the $250 per month limitation was rationally based and free from invidious discrimination. This points to the path which we should adopt decisionally in this case.

Although the right involved in this case is not as important as the right to vote (*Williams* v. *Rhodes*)[13] or the right to travel from state to state (*Shapiro* v. *Thompson*) or the right to marry (*Loving* v. *Virginia,* see fn 8), and the classification before us is not, like one based on nationality, race or alienage, inherently suspect (*Loving* v. *Virginia; Graham* v. *Richardson*),[14] a classification (such as the one here challenged) carving out of the entire population of Michigan a relatively small group of

[13] But see *McDonald* v. *Board of Election Commissioners of Chicago.* (1969), 394 US 802 (89 S Ct 1404, 22 L Ed 2d 739).
[14] Similarly, see *Hunter* v. *Erickson* (1969), 393 US 385 (89 S Ct 557, 21 L Ed 2d 616).

potential claimants should be more closely scrutinized than the kinds of classifications repeatedly approved in cases challenging classifications in legislation regulating business and industry.

Under the Motor Vehicle Accident Claims Act, any Michigan resident injured in this state by an uninsured motor vehicle may, to the extent he does not recover from other sources for his damages, have recourse to the Motor Vehicle Accident Claims Fund for indemnification up to $10,000 unless—the preclusion here challenged—his injuries were suffered in the course of his employment so that he is entitled to workmen's compensation benefits.[15] Under the accident claims act, if the collateral source of recovery is a source other than workmen's compensation the amount collaterally recovered is merely required to be deducted from the amount of the damages suffered before recourse may be had to the fund; but, if the collateral source is workmen's compensation, no recourse whatsoever may be had to the fund even though the damages suffered substantially exceed the benefits allowed under the workmen's compensation act.

Having in mind the nature of the legislation before us, the universality of the social problem sought to be dealt with, the omnipresence of the risk ameliorated by this legislation, the breadth of the general right of recovery: all residents of Michigan, and the narrowness of the preclusion: residents injured in the course of their employment, the state, not the precluded citizen, must show that the preclusion is reasonable.

It should be emphasized that no departure from the governing standard is intended. The ultimate

---

[15] MCLA §§ 257.1107, 257.1122, 257.1123, 257.1125 (Stat Ann 1968 Rev §§ 9.2807, 9.2822, 9.2823, 9.2825); MCLA § 257.1129 (Stat Ann 1971 Cum Supp § 9.2829).

question remains the same: Is the classification reasonable or rational;[16] conversely stated, is the classification invidious or arbitrary? I adopt only the approach followed consistently by the United States Supreme Court in all recent cases (including the *Dandridge* case) not involving the regulation of business or industry. See, also, cases cited in fn 38.

When the reasonableness of a classification in legislation of the nature and general breadth of this legislation is challenged, the State must explicate and factually support, it may not rely on the courts to conjure up, the asserted justification for the classification. It is then for the reviewing court to determine whether the asserted justification for the classification, so explicated and supported, is reasonable, not invidious or arbitrary.

## III.

Under the Motor Vehicle Accident Claims Act, enacted in 1965,[17] recourse may be had to the fund established under the act to recover for death, personal injury, or property damage suffered by a Michigan resident[18] occasioned in this state by an uninsured motor vehicle,[19] an unidentified motorist,[20]

---

[16] See *Levy* v. *Louisiana Through the Charity Hospital of Louisiana at New Orleans Board of Administrators, supra* (a law authorizing legitimate children, but precluding illegitimate children, from suing for the wrongful death of their mother is not rational and the classification is invidious.)

[17] PA 1965, No 198, MCLA § 257.1101 *et seq.* (Stat Ann 1968 Rev § 9.2801 *et seq.*).

[18] The act protects only residents of Michigan and residents of other states in which recourse of a substantially similar character to that provided by this act is afforded to residents of Michigan. MCLA § 257.1125 (Stat Ann 1968 Rev § 9.2825).

[19] MCLA § 257.1106 (Stat Ann 1971 Cum Supp § 9.2806); MCLA § 257.1107 (Stat Ann 1968 Rev § 9.2807).

[20] MCLA § 257.1112 (Stat Ann 1971 Cum Supp § 9.2812); MCLA § 257.1113 (Stat Ann 1971 Cum Supp § 9.2813).

or a motor vehicle driven without the owner's consent.[21]

A vehicle is deemed uninsured unless there is in force a liability policy meeting the requirements of the motor vehicle responsibility law with policy limits of $10,000 for injury to or death of one person, $20,000 for two or more persons in any one accident, and $5,000 for property damage.[22]

To finance the fund, upon the annual licensing of an insured vehicle a fee of $1 is required to be paid, and a fee of $35 for an uninsured vehicle. In the first five years of operation the State collected amounts far greater than required to pay claims and expenses. Early this year, an accumulated surplus was, by act of the Legislature, transferred as a loan from the accident claims fund to the state's general fund (see fn 37), the $1 fee was eliminated effective October–November, 1971, and for succeeding years if the report for the preceding period shows that the fund has a free surplus equal to or greater than 40% of the combined gross claims and claim expense reserves, and the fee for uninsured motor vehicles was increased to $45.[23]

The liability of the fund is limited to $10,000 for injury to or death of one person, $20,000 for two or more persons in any one accident, and $5,000 for property damage.[24]

With a view to decreasing potential claims against the fund, it is provided that no judgment may be

---

[21] MCLA § 257.1115 (Stat Ann 1968 Rev § 9.2815).

[22] See MCLA § 257.1102 (Stat Ann 1968 Rev § 9.2802); MCLA §§ 257.501–257.532 (Stat Ann 1968 Rev §§ 9.2201–9.2232), particularly MCLA § 257.520 (Stat Ann 1968 Rev § 9.2220). See, generally, *Bennett* v. *Pitts* (1971), 31 Mich App 530; *Allstate Insurance Company* v. *Motor State Insurance Company* (1971), 33 Mich App 469.

[23] PA 1971, Nos 19, 63, MCLA §§ 257.1103, 257.1103a (Stat Ann Curr Mat §§ 9.2803, 9.2803[1]).

[24] MCLA § 257.1123 (Stat Ann 1968 Rev § 9.2823).

paid unless a claimant has brought an action against all persons against whom he reasonably may be considered to have an action.[25]   The $10,000/$20,000/$5,000 monetary limitations on the fund's liability are applicable to the excess of the claim or judgment over any amount (a) recovered from any other source in partial discharge of the damages or (b) paid or payable by an insurer (except pursuant to policies of life insurance or hospital or medical policies)[26] or any other person pursuant to a policy of insurance, agreement or arrangement "providing for the payment of compensation, indemnity or other benefits".[27]   An insurer or other person from whom such contractual compensation, indemnity, or other benefits are recoverable may not, directly or indirectly, recover from the fund.[28]

At the same legislative session in which the accident claims act was enacted, the Legislature amended the insurance code to provide that unless a person insured under an automobile policy rejects uninsured motorist coverage any policy protecting him against his liability for personal injury shall be deemed also to protect him from loss caused by uninsured motor vehicles.[29]

The two acts, the act amending the insurance code and the accident claims act, are *in pari materia*.[30]

It is apparent that the Legislature sought, by the amendment made to the insurance code, to encour-

---

[25] MCLA § 257.1107 (Stat Ann 1968 Rev § 9.2807).   See, generally, *Steel* v. *Wilson* (1971), 29 Mich App 388.

[26] MCLA § 257.1122(4) (Stat Ann 1968 Rev § 9.2822[4]).

[27] MCLA § 257.1122(2), (3) (Stat Ann 1968 Rev § 9.2822[2], [3]).

[28] MCLA § 257.1122(5) (Stat Ann 1968 Rev § 9.2822[5]).

[29] PA 1965, No 388, adding § 3010 to the insurance code, MCLA § 500.3010 (Stat Ann 1971 Cum Supp § 24.13010).

[30] *Woods* v. *Progressive Mutual Insurance Co.* (1968), 15 Mich App 335; *Oatis* v. *Dairyland Insurance Company* (1969), 20 Mich App 367, 372.

age insured owners and drivers to purchase uninsured motorist insurance protection, and that this was done with a view to reducing the number of claims against the Motor Vehicle Accident Claims Fund.[31]

## IV.

The state contends that the legislative purpose in enacting the accident claims act was to provide a minimum source of recovery to persons injured by uninsured motorists, and that employees so injured who are entitled to recover workmen's compensation benefits were barred from proceeding against the fund because the legislative judgment was that injured employees already had an adequate minimum source of recovery in the form of workmen's compensation benefits. The state argues that this was a reasonable basis for excluding injured employees from the benefits of the accident claims act, and that, therefore, the discrimination against them is not invidious.

The state's argument rests on the premise that the Legislature barred persons having collateral sources of recovery from recourse to the fund. It did not. The *only* group having a collateral source of recovery, minimum, adequate or otherwise, barred from proceeding against the fund is injured employees who are entitled to workmen's compensation benefits.

A person who is injured by joint tortfeasors, one or more of whom is insured or solvent and another uninsured, may have recourse to the fund for whatever portion of any judgment obtained that is not recovered from an insured or solvent joint tort-

---

[31] See *Oatis* v. *Dairyland Insurance Company, supra.*

feasor.[32] Proceeds payable under a policy of life insurance or under a policy, contract, or agreement providing for the payment of any hospital or medical expense need not be deducted from the aggrieved person's damages before recourse to the fund.[33] Insured drivers or owners who purchase uninsured motorist insurance may, if their damages exceed the policy limits of their uninsured motorist insurance protection, have recourse to the fund for the excess.[34]

But it could be argued, and correctly so, that a sound reason for allowing owners and drivers who purchase uninsured motorist insurance to recover for the excess is that otherwise there would be no incentive to purchase uninsured motorist insurance. Permitting purchasers of uninsured motorist insurance to recover from the fund the excess of their damages over the amounts recoverable under their policies encourages the purchase of uninsured mo-

---

[32] See *Steel* v. *Wilson* (1971), 29 Mich App 388; *Basch* v. *Secretary of State* (1971), 30 Mich App 459.

Section 7(3) of the act provides:

"The secretary shall not pay out of the fund any amount in respect of a judgment unless the judgment was given in an action brought against all persons against whom the applicant might reasonably be considered as having a cause of action in respect of the damages in question and prosecuted against every such person to judgment or dismissal." MCLA § 257.1107(3) (Stat Ann 1968 Rev § 9.2807 [3]).

Section 23(2) of the act provides:

"Where any amount is recovered from any other source in partial discharge of the claim or judgment, or where a claim or judgment for damages is reduced by an amount paid or payable by an insurer or any other person, as provided in section 22(2) or (3) of this act, then the limitations set forth in subsection 1 of this section shall be applicable to the excess of the claim or judgment over the amount by which the claim or judgment is partially satisfied or is reduced under section 22(2) or (3). Any amount paid out of the fund in excess of the amount authorized by this section may be recovered by action brought by the secretary." MCLA § 257.1123(2) (Stat Ann 1968 Rev § 9.2823[2]).

[33] MCLA § 257.1122(4) (Stat Ann 1968 Rev § 9.2822[4]).

[34] *Oatis* v. *Dairyland Insurance Company, supra; Green* v. *Blicharski* (1971), 32 Mich App 15.

torist insurance and in the long run serves to reduce the aggregate claims filed against the fund. There is, thus, so the argument goes, a reasonable basis for the classification; the classification achieves an overall reduction in the amounts of the claims filed against the fund by owners and drivers insured against loss caused by uninsured motorists.

If the accident claims act reflected a general policy of barring those having a collateral source of recovery from proceeding against the fund with such exceptions as would encourage the purchase of protection that would constitute a collateral source, then a different question would be presented. However, since persons injured by a solvent or insured joint tortfeasor or who purchase various kinds of insurance or, indeed, who have any collateral source of recovery except workmen's compensation, may proceed against the fund for their unpaid damages, we could not rightly say that the discrimination against injured employees entitled to workmen's compensation benefits is based on a legislative determination that persons having a collateral source of recovery should not be permitted to proceed against the fund except to the extent that allowing an exception would encourage the purchase of collateral protection.

An injured employee may, indeed, recover workmen's compensation benefits without regard to his own contributory negligence and without proving his employer to be at fault. However, in order to collect from the accident claims fund an injured employee must, like every other claimant, establish that he was free of fault and that the uninsured motorist was at fault. It does not make sense, it would not be rational, to draw a distinction between one group and another based on whether in order

to collect from a collateral source they must prove themselves free of fault when everyone who wishes to proceed against the accident claims fund must prove that he was himself free of fault, that the uninsured motorist was at fault and that the amount of the claimant's damages exceeds the amount forthcoming from a collateral source.[35]

The argument that the Legislature has determined that injured employees have an adequate minimum source of recovery in the form of workmen's compensation benefits, while it has a certain verbal appeal, is clearly a rationalization for something that was done for another reason. If the Legislature was really concerned with the adequacy of the compensation paid injured employees it would not have excluded them altogether from the coverage of the accident claims act. The structure of the accident claims act is such that anyone who recovers from the accident claims fund has received an inadequate recovery or no recovery from whatever collateral sources may be open to him. An injured employee, like everyone else, can only recover from the fund if the amount of his damages exceeds the amount forthcoming from collateral sources; the discrimination against injured employees is not designed to avoid redundancy in compensation.

## V.

I am satisfied that the legislative purpose in discriminating against injured employees who are entitled to receive workmen's compensation benefits was simply to reduce the fund's exposure by eliminating a readily identifiable group of potential claimants who, arguably, were in less need of the

---

[35] Moreover, other groups of potential claimants against the fund can recover from their collateral sources without proof of fault. *E.g.*, persons holding life, health, medical expense, or accident insurance.

protection to be provided by the legislation under consideration. When the accident claims act was enacted there was great concern that the fees charged would not be sufficient to assure its actuarial soundness. The Legislature, looking for means of strengthening the fund, adopted the expedient of excluding injured employees who are entitled to recover workmen's compensation benefits. Could it constitutionally do so?

That depends on the facts, facts not of record.

Merely because, as here, a relatively small group is excluded, does not in and of itself demonstrate that the classification is invidious. It has long been recognized that the state may for sound reasons of public policy grant benefits to some and deny like benefits to others. Thus, in *Williamson* v. *Lee Optical of Oklahoma* (1955), 348 US 483, 489 (75 S Ct 461, 99 L Ed 563), the United States Supreme Court, in language also adopted by our Supreme Court, declared:

> "Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the Legislature may think. [Citation omitted.] Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. [Citation omitted.] The Legislature may select one phase of one field and apply a remedy there, neglecting the others."[36]

In *Gauthier* v. *Campbell, Wyant & Cannon Foundry Co.* (1960), 360 Mich 510, 517, the Michigan Supreme Court unanimously sustained the constitutionality of the $6,000 limitation then placed on workmen's compensation for industrial silicosis vic-

---

[36] Quoted approvingly in *Wolodzko* v. *Wayne Circuit Judge, supra*, p 534, fn 4.

tims.  The Court reviewed the history of equal protection attacks on workmen's compensation legislation and referred to earlier decisions sustaining a classification exempting employers with less than a specified number of employees and classifications exempting household servants, farm laborers, and casual employees.  The Court observed that it had become

"firmly established that the Legislature could attack one or several evils without having its statutory effort fail because it did not attack all of the evils in the field.

"Indeed, we are led to wonder whether, absent this legislative power of exception and exemption by classification, any of the great social legislation of our time could ever have been written upon the books."

The *Gauthier* Court pointed out that the original workmen's compensation act made no provision for occupational diseases and that by progressive amendment protection had been provided for silicosis victims, first with a limitation of $3,000, later raised to $6,000 and subsequently to $10,500.  It had taken 31 years after the passage of the workmen's compensation act to secure any sort of coverage for foundry workers and without a monetary limitation the Legislature probably would not, because of concern for the economic impact on the industry and the possibility that foundries would close and workers would lose their jobs, have provided any protection at all.

The impact on the industry of allowing full recovery, because of the accumulated prior exposure of employees to the disease and the resulting "accrued liability", and the attendant repercussions on the current employment of workers already suffer-

ing from some stage of the disease, was, said the Court, a reasonable and rational basis for imposing *a dollar limitation* on the amount recoverable by silicosis victims even though no like limitation circumscribed the amount recoverable by victims of other compensable injuries or diseases.

The Court added significantly and relevantly to our disposition of this case (pp 523, 524):

"There are no facts in this record which suggest that the classification complained of was 'obsolete' as to decedent at the time of his disablement. * * *

"Any argument that the scheme is now 'obsolete' as to future disabilities must wait consideration on a record which presents some facts from which it might be deduced that the legislative reasoning had lost all value with passage of time and change of circumstances".

In *Gauthier,* unlike this case, the record showed a substantial economic reason for the discrimination. In this case, there is nothing in the record to substantiate the legislative decision that, in order to preserve the actuarial soundness of the fund, it is reasonably necessary to foreclose injured employees from proceeding against the fund for the excess of their damages caused by an uninsured motorist over the amount recoverable as workmen's compensation.

Earlier in this opinion I observed (last three paragraphs of part II, *supra*) that, having in mind the nature of the legislation before us, the breadth of the general right of recovery and the narrowness of the preclusion (employees injured in the course of their employment), the state, not the precluded citizen, must show that the preclusion is reasonable.

The accident claims act provides that the fees required to be collected from motorists shall be paid into the fund established under the act. The act

does not provide for the funding of deficits which might develop as a result of adverse actuarial experience; it is not stated whether any deficits would be met by the legislative appropriation of monies raised by general taxation or an increase in the prescribed fees or in some other manner.

In addressing itself to a social problem requiring toward its solution the appropriation of public funds, the Legislature must of necessity draw lines. The implorations on the public treasury are boundless. Legislatures, not courts, have the appropriating power and draw the fiscal lines. Courts are, therefore, reluctant to declare that a legislative classification designed to conserve public funds denies equal protection of the laws. See *Dandridge* v. *Williams, supra,* pp 478–480, 487. But see *Shapiro* v. *Thompson, supra,* p 633; *Fox* v. *Employment Security Commission* (1967), 379 Mich 579.

The accident claims fund is not financed through the appropriation of money raised through general taxation. Nor has the Legislature decreed that any surplus in the fund should be used to defray other expenses of government designated by the Legislature or that a surplus shall be permanently transferred to the general fund. The monies in the accident claims fund have been treated by the Legislature as a kind of trust fund for the benefit of persons injured by uninsured motorists.[37]

The rationality of the classification barring claims by injured employees entitled to workmen's compensation, a classification, I am satisfied, that was made

---

[37] The Legislature has appropriated $9,000,000 a year, plus interest at a rate to be determined annually by the Legislature, to repay the $45,000,000 transferred earlier this year from the accident claims fund to the state general fund, the first annual installment being payable in the fiscal year beginning July 1, 1973. PA 1971, Nos 19, 63, MCLA §§ 257.1103, 257.1103a (Stat Ann Curr Mat §§ 9.2803, 9.2803[1]).

to preserve the actuarial integrity of the fund, must be judged in the light of the objective sought to be served by making the classification. A classification which does not foster the objective which impelled it is not rational. See *Fox* v. *Employment Security Commission, supra,* p 591. If the discrimination against injured employees entitled to workmen's compensation benefits bears no reasonable relationship to the purpose of protecting the actuarial soundness of the fund, then the discrimination is irrational.

The record is silent as to the number and the amounts of the claims precluded by the exclusion of claims by injured employees entitled to workmen's compensation benefits. It has not been shown that by excluding the claims of injured employees a substantial or important contribution is made to preserving the actuarial soundness of the fund. Without such a showing, we would not be justified in validating the preclusion on the ground that the Legislature acted reasonably in excluding the claims of injured employees so as to conserve monies required to fund the uninsured motorist program so that, although the monies available were insufficient to deal fully with the entire social problem of unpaid judgments against uninsured motorists, a partial attack could be made on the problem.

We know that the fund is actuarially sound, so much so that the Legislature recently ordered a transfer of $45,000,000 as a loan to the state general fund. Rather than decide these consolidated cases on the basis of unproven assumptions or indulge presumptions which are without evidential support, the sound and correct disposition of these cases is to remand them to the trial court to take additional evidence and for additional fact finding on the question whether there is a reasonable need to bar the claims

of injured employees entitled to workmen's compensation benefits so as to preserve the actuarial soundness of the fund, determined on a current basis without regard to any extraordinary reserves established.[38]

Until dollars and cents figures are presented, there is no way of rationally deciding the presented question of the reasonableness and rationality of the legislative discrimination against injured employees.

The facts should be determined in the light of the experience because, as indicated in *Gauthier* and as shown by the cases there cited, a change in facts,

---

[38] Recently in *Park* v. *Lansing Board of Education* (1971), 32 Mich App 752, plaintiffs, administrative employees of a school district who lived outside the geographical boundaries of the district, challenged the validity of a policy rule requiring such personnel to live within the district on the ground, among others, that an exception for persons who had continuously resided outside of the district since July 1, 1962, denied plaintiffs the equal protection of the laws. We remanded for the taking of additional evidence an additional fact finding, saying that the record presented was insufficient to permit a determination whether the cutoff date of July 1, 1962, "bears some reasonable relation to the intended purpose of the residence policy rule". Similarly, see *Askew* v. *Hargrave* (1971), 401 US 476, 479 (91 S Ct 856, 858; 28 L Ed 2d 196, 199), where the Court said:

"Since the manner in which the program operates may be critical in the decision of the equal protection claim, that claim should not be decided without fully developing the factual record at a hearing."

Other cases holding that an appellate court may remand for the taking of additional evidence in circumstances comparable to those in the present case include *City of Hammond* v. *Schappi Bus Line* (1927), 275 US 164, 171, 172 (48 S Ct 66, 72 L Ed 218); *United States, ex rel. Bradshaw,* v. *Alldredge* (CA3, 1970), 432 F2d 1248, 1250; *Smith* v. *Auditor General* (1962), 366 Mich 165; *Robb* v. *Liquor Control Commission* (1945), 311 Mich 604; *Billiet* v. *Aulgur* (1969), 18 Mich App 391; *Roberts* v. *Rubin* (1968), 13 Mich App 652; *Sharer* v. *Tuck* (1916), 172 Ky 200 (189 SW 27); *Sioux City Bridge Co.* v. *Dakota County* (1923), 110 Neb 597 (194 NW 729); *A. & H. Transp., Inc.,* v. *Mayor & City Council of Baltimore* (1968), 249 Md 518 (240 A2d 601); *Mara* v. *Township of Parsippany-Troy Hills* (1955), 20 NJ 274 (119 A2d 449); *Garratt* v. *Dailey* (1955) 46 Wash 2d 197 (279 P2d 1091); *Bernier* v. *Preckel* (1925), 60 ND 547 (236 NW 242).

conditions, or circumstances may render unconstitutional a statute valid when enacted.[39]

## VI.

Under the workmen's compensation act an employer or an employer's workmen's compensation insurance carrier who pays benefits to an injured workman is subrogated to any claim of the workman against a third party tortfeasor.[40]  Under § 22(5) of the accident claims act no amount may be paid out of the fund "directly or indirectly  *  *  *  to or on behalf of any insurer or other person to reimburse or indemnify the insurer or such other person for any amount paid or payable by the insurer or such other person, by reason of the existence of any policy of insurance or any contract, agreement or arrangement, providing for the payment of any compensation, indemnity or other benefits".[41]

Although the parties have not adverted to these statutory provisions in their briefs, they may be relevant to the correct disposition of these cases.

If the provision in the accident claims act prohibiting payment, directly or indirectly, to persons whose claims arise in the manner described in § 22 (5) of the act bars claims against the fund by employers or their insurers who have paid workmen's compensation benefits, then an employee injured by

---

[39] *Vigeant* v. *Postal Telegraph Cable Company* (1927), 260 Mass 335 (157 NE 651, 53 ALR 867); *Nashville, C. & S. L. R. Co.* v. *Walters* (1935), 294 US 405, 415 (55 S Ct 486, 79 L Ed 949); *Atlantic C. L. R. Co.* v. *Ivey* (1941), 148 Fla 680 (5 So 2d 244, 139 ALR 973).

Similarly, see *Detroit Edison Company* v. *Department of Treasury* (1969), 382 Mich 497, 506; *Abie State Bank* v. *Bryan* (1931), 282 US 765, 772 (51 S Ct 252, 75 L Ed 690).

[40] MCLA § 413.15 (Stat Ann 1968 Rev § 17.189).

[41] MCLA § 257.1122(5) (Stat Ann 1968 Rev § 9.2822[5]).

an uninsured motorist who is entitled to workmen's compensation benefits might, if he may also proceed against the accident claims fund, receive more from the fund than he would receive if § 22(5) were not part of the act.

It might, therefore, be appropriate to require that any recovery by an injured employee from the accident claims fund be reduced to such amount as he would have been entitled to retain if § 22(5) were not part of the act; if that is required, then the increased exposure of the fund resulting from allowing an injured employee to recover from the fund would be substantially less than it would be if he is entitled to recover from the fund an amount that is not reduced by the amount which, but for § 22(5), would be payable to his employer or his employer's insurer in reimbursement of the workmen's compensation benefits paid to the employee. Reducing an injured employee's recovery from the fund by the amount that, but for § 22(5), would be payable to the employer or the employer's insurer, would tend to make less reasonable the discrimination against injured employees.[42]

Because the question has not been briefed or argued, I intimate no opinion on the interplay of the employer's and the employer's insurer's right of subrogation under the workmen's compensation act and § 22(5) of the accident claims act. I refer to the possible relevance of the right of subrogation of the employer and his insurer under the work-

---

[42] Under the circumstances that by reason of § 22(5) subrogees and indemnitees generally are not entitled to recover from the accident claims fund, it is doubtful whether disallowing recovery from the fund by workmen's compensation subrogees would work an invidious or arbitrary discrimination against them, most subrogees and indemnitees being treated alike.

men's compensation act because these consolidated cases present a question of public importance that transcends the interests of the parties.