GREAT AMERICAN INSURANCE COMPANY v QUEEN

Docket No. 62185. Argued October 2, 1979 (Calendar No. 6).—Decided December 23, 1980.

Great American Insurance Company paid $4,567 in workers' compensation benefits under its insurance contract with Oakland County to Peter Queen, an Oakland County deputy sheriff, for injuries he suffered while driving a county patrol car which was struck by automobiles driven by Patricia Moore and Michael Hughes. Queen's claims against Moore and Hughes for non-economic losses were settled for $18,500 by their no-fault automobile insurers without notice to the workers' compensa-

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d (Rev), Automobile Insurance §§ 34, 348.
   7A Am Jur 2d, Automobile Insurance § 443.
   82 Am Jur 2d, Workmen's Compensation § 426 et seq.
   Insured's receipt of or right to workmen's compensation benefits as affecting recovery under accident, hospital, or medical expense policy. 40 ALR3d 1012.
[2] 7 Am Jur 2d (Rev), Automobile Insurance §§ 354, 368.
   82 Am Jur 2d, Workmen's Compensation § 250.
[3, 4, 11, 13-15] 7 Am Jur 2d, Automobile Insurance §§ 291, 368.
   81 Am Jur 2d, Workmen's Compensation §§ 77, 364.
[5] 5 Am Jur 2d (Rev), Automobile Insurance §§ 291, 368.
   81 Am Jur 2d, Workmen's Compensation §§ 27, 29.
[6] 82 Am Jur 2d, Workmen's Compensation §§ 403, 426 et seq.
[7] 7 Am Jur 2d (Rev), Automobile Insurance § 292.
[8] 7 Am Jur 2d (Rev), Automobile Insurance § 23.
   81 Am Jur 2d, Workmen's Compensation § 2.
[9] 81 Am Jur 2d, Workmen's Compensation § 65 et seq.
[10] 7 Am Jur 2d, Automobile Insurance § 349.
[12] 7 Am Jur 2d, Automobile Insurance § 23.
   81 Am Jur 2d, Workmen's Compensation § 65 et seq.
[16] 4 Am Jur 2d, Appeal and Error § 13.
[17, 18] 73 Am Jur 2d, Statutes § 392.
[19] 73 Am Jur 2d, Statutes § 145.
[20] 7 Am Jur 2d (Rev), Automobile Insurance §§ 25-27.
   73 Am Jur 2d, Statutes § 37.
[21] 7 Am Jur 2d (Rev), Automobile Insurance § 23.
[22] 16A Am Jur 2d, Constitutional Law § 746 et seq.

tion insurer. Great American Insurance Company brought an action against Queen, Moore, and Hughes for reimbursement of workers' compensation benefits from the settlement with Moore and Hughes on the theory that Moore and Hughes were third-party tortfeasors and that the plaintiff was entitled to subrogation under the Worker's Disability Compensation Act. The Oakland Circuit Court, Alice L. Gilbert, J., granted summary judgment for the defendants. The Court of Appeals, Cynar and Freeman, JJ. (Allen, P.J., concurring), affirmed in a per curiam opinion holding that the workers' compensation benefits were for Queen's economic loss and the no-fault benefits for his non-economic loss so that there was no double recovery (Docket No. 77-4457). Plaintiff appeals. In an opinion by Justice Levin, joined by Chief Justice Coleman and Justices Kavanagh and Fitzgerald, the Supreme Court *held:*

The workers' compensation insurance carrier in this case seeks reimbursement for payments which substituted for no-fault benefits otherwise payable, and therefore is not entitled to reimbursement.

1. There is no clear and irreconcilable repugnance between the no-fault insurance act and the workers' compensation act which would operate to repeal, by implication, the reimbursement provisions of the workers' compensation act in all cases involving motor vehicle accidents. It is possible to give both acts simultaneous literal effect. The workers' compensation carrier could be permitted reimbursement from any tort recovery, whether for economic or non-economic loss, although the employee's right to proceed in tort is limited by the no-fault act. When an employee is injured in a motor vehicle accident in the course of his employment, his entitlement to compensation is governed by the workers' compensation act *and* the no-fault insurance act. His rights and entitlements under each act are affected by his being injured under circumstances which make him subject to the other.

2. Under the workers' compensation act the employee is entitled to statutory compensation and may also seek to enforce the liability of a third party, but by operation of the no-fault act, that liability is limited. The worker is entitled to no-fault benefits, but once the liability of the no-fault insurer is determined, it is reduced by the amount of workers' compensation benefits paid or payable because of the injury. Had the Legislature considered the two acts' application to a motor vehicle accident occurring in the course of employment, it would have explicitly provided that when a workers' compensation carrier provides benefits which would otherwise have been payable by

a no-fault insurer, its reimbursement rights are coextensive with those of the no-fault insurer whose liability it replaces and are thus limited to cases where there is tort recovery for basic economic loss. However, when the workers' compensation carrier pays benefits which do not substitute for no-fault benefits because they exceed no-fault benefits in duration or amount, it should be treated like all other workers' compensation carriers and be entitled to reimbursement out of any third-party recovery.

3. An employee's common-law right to proceed in tort against persons other than his employer or co-workers was not altered by the workers' compensation act. If he is awarded damages, the employer or its workers' compensation carrier is entitled to reimbursement for benefits paid or payable under the act; but because the employee need not repay more than he recovered in the third-party action he, in effect, recovers under the more generous of the two systems, tort or workers' compensation, but not both. The Court has held that an employee who recovers damages in a third-party tort action is not entitled to any greater compensation than another person who is injured under similar circumstances outside of the course of employment. Application of that rule to this case would require that to the extent defendant Queen recovers outside the workers' compensation system he should be permitted to retain no further compensation than that received by a victim of a motor vehicle accident who was not injured in the course of his employment.

4. No-fault insurance benefits compensate purely economic elements of damage. Persons severely injured may sue the third-party tortfeasor for work loss exceeding that compensated by the no-fault carrier, for non-economic loss when the injury is severe, and for basic economic loss if the driver is denied tort immunity under the act. The no-fault insurer's right to reimbursement out of tort recoveries from third parties is governed by the no-fault act as construed, and extends only to those atypical cases where tort recovery is permitted for elements of damage compensated by no-fault benefits; there is no right to reimbursement unless there is duplicate recovery. Workers' compensation benefits are required to be set off against no-fault benefits under the no-fault act.

5. Had the Legislature intended that a worker injured in a motor vehicle accident receive only the workers' compensation benefits received by other workers incurring similar disabilities in accidents not involving motor vehicles, it could have excluded persons injured in the course of their employment from the no-fault act, but instead the Legislature has decided that

persons injured in motor vehicle accidents in the course of their employment should receive no-fault compensation and have the limited right to tort recovery of other victims of motor vehicle accidents. However, because it decided that the employee should not be permitted to recover full no-fault benefits in addition to workers' compensation benefits, the Legislature provided that the workers' compensation benefits, as benefits payable under state law, are to be subtracted from no-fault benefits otherwise payable. The set-off and subrogation provisions of the workers' compensation act and the no-fault act appear to be directed to the allocation of costs between the sources of the benefits and the avoidance of double recovery, and not to be intended to provide victims of motor vehicle accidents who are injured in the course of their employment with less compensation than other accident victims.

6. The Legislature intended the workers' compensation carrier to substitute for the no-fault insurer to the extent that workers' compensation benefits duplicate no-fault benefits otherwise payable. Thus, the payment of workers' compensation benefits which do not substitute for no-fault benefits, because they exceed no-fault benefits in amount or duration, gives rise to a right to reimbursement from third-party tort recoveries in the same manner as the payment of workers' compensation for injuries which are not suffered in motor vehicle accidents. In this case, the workers' compensation carrier seeks reimbursement for medical treatment which would be compensable under the no-fault act; there is no right to reimbursement for such payments.

Affirmed.

Chief Justice Coleman concurred with Justice Levin and wrote to add that corrective legislative action is advisable, if not imperative.

Justice Ryan, concurring in the result, would construe the no-fault insurance act and the workers' compensation act together in this case.

1. The two statutes are complete and self-contained legislative schemes addressing discrete problems. The primary purpose of both is to provide benefits to the injured party for economic injuries. The two statutes differ, however, in the manner in which the injured party may proceed against a third-party tortfeasor. Under the workers' compensation act, the employee's entire recovery, economic and non-economic, may be obtained from the third party on a common-law tort theory. There is no duplication of benefits because the payer of workers' compensation benefits is reimbursed out of the tort

recovery. Under the no-fault insurance act, recovery from third parties for tort is limited to those injuries that fall outside the coverage of no-fault benefits: non-economic loss and economic loss exceeding no-fault benefits. Thus, there is no duplication of compensation and, therefore, no need to reimburse the no-fault insurance carrier. The Legislature, although by different methods, in both statutes provided against double recovery.

2. In this case, the no-fault insurance act and the workers' compensation act are jointly operative, and statute and case law prevents the Court from declaring that only one of the two acts shall govern. The tort liability of a third party in a case arising from the ownership, maintenance, or use of a motor vehicle is determined solely by the no-fault insurance act notwithstanding any other provision of law. Consequently, to the extent that the workers' compensation act sanctions tort actions to redress employees' injuries arising from the use of a motor vehicle, it is rendered inoperative by the no-fault act, but the workers' compensation act is not entirely excluded from the compensation scheme. By the Court's decisions construing the set-off provisions of the no-fault act, when workers' compensation and no-fault benefits are paid for the same injury, the workers' compensation benefits must be applied first and the amount of that payment is to be deducted from the liability of the no-fault insurance carrier. Consequently, the workers' compensation benefits will always constitute a portion of the recovery in such a case.

3. Although the source of the recovery is attributable in part to workers' compensation benefits, the recovery is subsumed within the no-fault award and adheres to the compensation structure of the no-fault act. Because there is no overlap between no-fault personal protection benefits and tort recovery (except for intentional torts, which are not in issue here), there is no overlap between workers' compensation benefits and tort recovery under the no-fault act. The legislative mandate is for reimbursement where there is double recovery. Without double recovery there is no need for reimbursement.

4. The no-fault insurance act effectively abrogates the third-party action for liability arising from the use of a motor vehicle which otherwise would be permitted by the workers' compensation act. It is only logical to conclude that the sentence of the same provision of the workers' compensation act which provides for reimbursement of the workers' compensation carrier and which was enacted as part of a self-contained program of compensation in conjunction with the third-party action allowed by the sentence immediately preceding it is also effec-

tively abrogated by the no-fault act. The Court is obliged to construe the workers' compensation act and the no-fault insurance act together in this case, and cases construing the workers' compensation act before the no-fault act was effective are inapposite.

5. The result reached, that the workers' compensation insurer is not entitled to reimbursement out of the tort recovery for non-economic loss, obviates the need to consider constitutional issues.

Justice Williams, joined by Justice Moody, would also hold that the insurer is not entitled to reimbursement under these circumstances.

1. The most recent legislative act on a subject will by implication repeal an earlier act to the extent that they are repugnant and inconsistent, despite the general rule that repeals by implication are not favored. In this case there is a clear and irreconcilable direct repugnance between the subrogation provisions of the no-fault insurance act, which limits the right of a claimant to sue for non-economic damages and which, by judicial construction and recent legislative enactment, does not permit reimbursement of the insurer for non-economic damages recovered from the tortfeasor, and the subrogation provision of the workers' compensation act, which allows the claimant to bring a third-party tort action for any proximately caused injury, allows general recovery of damages, and permits reimbursement of the insurer for economic and non-economic damages recovered from the tortfeasor. Because the no-fault insurance act is the more recent of the two acts, the subrogation provision of the workers' compensation act must be construed as repealed by implication in this case.

2. The test to determine whether provisions of the no-fault insurance act comport with the Due Process Clause is whether the legislation bears a reasonable relation to a permissible legislative objective. The test to determine whether it comports with the Equal Protection Clause is essentially the same. The permissible legislative objective of the no-fault insurance act is to make whole the seriously injured victims of automobile accidents. However, because the workers' compensation act allows the workers' compensation insurer reimbursement against any third-party tort recovery and the no-fault insurance act has been construed and amended so that the no-fault insurer is not entitled to reimbursement against any third-party tort recovery, two classes of victims of automobile accidents have been created. The first class consists of victims who

are not injured in the course of their employment. They are made whole by recovery of economic loss from their own insurer and recovery of non-economic losses from the third-party tortfeasor. The second class consists of victims who are injured in the course of their employment. They also may recover economic benefits under the workers' compensation act but their recovery from the third-party tortfeasor may be diminished by subrogation of the workers' compensation insurer. Despite the fact that both classes are similarly situated, the subrogation provision treats the second class so differently that the permissible legislative objective is defeated. The arbitrary distinction of an employment relation bears no reasonable relation to the permissible legislative purpose of the no-fault insurance act, to make victims of automobile accidents whole. The arbitrary and unreasonable difference in treatment of the two classes is barred by the Equal Protection Clause. Therefore, the subrogation provision of the workers' compensation act is inapplicable to any third-party tort recovery obtained under the pertinent provisions of the no-fault insurance act.

86 Mich App 362; 272 NW2d 659 (1978) affirmed.

OPINION OF THE COURT

1. WORKERS' COMPENSATION — AUTOMOBILES — NO-FAULT INSURANCE — SUBROGATION — STATUTES — CONSTRUCTION — REPEAL BY IMPLICATION.

There is no clear and irreconcilable repugnance between subrogation provisions of the no-fault insurance act and the Worker's Disability Compensation Act which would operate to repeal, by implication, the subrogation provision of the Worker's Disability Compensation Act where a worker in the course of his employment is injured by a third-party tortfeasor in a motor vehicle accident (MCL 418.827, 500.3101 *et seq.;* MSA 17.237[827], 24.13101 *et seq.*).

2. WORKERS' COMPENSATION — AUTOMOBILES — NO-FAULT INSURANCE — STATUTES.

The entitlement of an employee to compensation for injuries suffered in a motor vehicle accident in the course of his employment is governed by the Worker's Disability Compensation Act and the no-fault insurance act; his rights and entitlements under each act are affected by his being injured under circumstances which make him subject to the provisions of the other (MCL 418.101 *et seq.,* 500.3101 *et seq.;* MSA 17.237[101] *et seq.,* 24.13101 *et seq.*).

3. WORKERS' COMPENSATION — THIRD-PARTY ACTIONS — AUTOMOBILES — NO-FAULT INSURANCE.

An employee who is injured in the course of his employment and recovers damages in a third-party tort action is not entitled to any greater compensation than another person who is injured under similar circumstances outside of the course of employment; application of that rule to an employee who is injured by a third-party tortfeasor in a motor vehicle accident requires that to the extent that the employee recovers outside the workers' compensation system he should be permitted to retain no further compensation than that received by a victim of a motor vehicle accident who was not injured in the course of his employment (MCL 418.827, 500.3101 *et seq.;* MSA 27.237[827], 24.13101 *et seq.).*

4. WORKERS' COMPENSATION — AUTOMOBILES — NO-FAULT INSURANCE — SET-OFF — THIRD-PARTY ACTIONS — SUBROGATION.

The Legislature has decided that employees who are injured in motor vehicle accidents in the course of their employment may recover no-fault insurance benefits from which workers' compensation benefits, as benefits payable under state law, are to be subtracted; however, it does not appear that the Legislature intended the third-party recovery of a person injured in the course of his employment to be subject to greater subrogation claims by insurers simply because a part of the benefits otherwise payable under the no-fault act are paid from a different source, workers' compensation, by operation of the set-off provision (MCL 418.827, 500.3109, 500.3116; MSA 17.237[827], 24.13109, 24.13116).

5. WORKERS' COMPENSATION — AUTOMOBILES — NO-FAULT INSURANCE.

The Legislature intended a workers' compensation carrier to substitute for the no-fault insurer to the extent that workers' compensation benefits duplicate no-fault benefits otherwise payable to an employee who in the course of his employment is injured by a third-party tortfeasor in a motor vehicle accident (MCL 418.827, 500.3116; MSA 17.237[827], 24.13116).

6. WORKERS' COMPENSATION — AUTOMOBILES — NO-FAULT INSURANCE — SUBROGATION — THIRD-PARTY ACTIONS.

The payment of workers' compensation benefits which do not substitute for no-fault insurance benefits, because they exceed no-fault benefits in amount or duration, gives rise to a right of the workers' compensation carrier to reimbursement from third-party recoveries by an employee injured by a motor vehicle accident in the course of his employment in the same

manner as the payment of workers' compensation benefits for other injuries (MCL 418.827, 500.3101 *et seq.;* MSA 17.237[827], 24.13101 *et seq.*).

7. WORKERS' COMPENSATION — AUTOMOBILES — NO-FAULT INSURANCE — SUBROGATION — THIRD-PARTY ACTIONS — MEDICAL EXPENSES.

A workers' compensation carrier has no right to reimbursement for workers' compensation payments for medical treatment which would also be compensable under the no-fault insurance system where an employee in the course of his employment is injured by a third-party tortfeasor in a motor vehicle accident and recovers workers' compensation and no-fault benefits for the same injury (MCL 418.827, 500.3101 *et seq.;* MSA 17.237[827], 24.13101 *et seq.*).

OPINION BY RYAN, J.

8. WORKERS' COMPENSATION — NO-FAULT INSURANCE — STATUTES — LEGISLATIVE PURPOSE.

*The Worker's Disability Compensation Act and the no-fault insurance act are complete and self-contained legislative schemes addressing discrete problems; the primary purpose of both statutes is to provide benefits to the injured party for economic injuries suffered as the result of an accident (MCL 418.101 et seq., 500.3101 et seq.; MSA 17.237[101] et seq., 24.13101 et seq.).*

9. WORKERS' COMPENSATION — THIRD-PARTY ACTIONS — SUBROGATION.

*In addition to providing workers' compensation benefits to the injured party, the Worker's Disability Compensation Act permits that party to recover by a third-party tort action all damages, economic and noneconomic; duplication of recovery is eliminated by the statutory requirement for reimbursement of the payer of workers' compensation benefits out of the recovery obtained from the third-party tortfeasor, and thus the employee's entire recovery may be obtained from the third party (MCL 418.827; MSA 17.237[827]).*

10. AUTOMOBILES — NO-FAULT INSURANCE — THIRD-PARTY ACTIONS — SUBROGATION.

*The no-fault insurance act limits recovery from third parties in tort to those injuries that fall outside the coverage of no-fault benefits: noneconomic loss and economic loss exceeding no-fault benefits; thus, there is no duplication of no-fault benefits paid for the same accident and, therefore, no need to reimburse the no-fault insurance carrier (MCL 500.3116, 500.3135; MSA 24.13116, 24.13135).*

11. WORKERS' COMPENSATION — NO-FAULT INSURANCE — DOUBLE RECOVERY.

*Prevention of double recovery is a legislative mandate informing the Worker's Disability Compensation Act and the no-fault insurance act; both statutes, as complete and self-contained legislative schemes, achieve this purpose, although by different methods (MCL 418.101 et seq., 500.3101 et seq.; MSA 17.237[101] et seq., 24.13101 et seq.).*

12. WORKERS' COMPENSATION — NO-FAULT INSURANCE — THIRD-PARTY ACTIONS — SUBROGATION.

*The tort liability of a third party for injuries suffered in a motor vehicle accident by an employee in the course of his employment is determined solely by the no-fault insurance act notwithstanding any other provision of law; consequently, to the extent that the Worker's Disability Compensation Act sanctions tort actions to redress employees' injuries arising from the use of a motor vehicle and provides for reimbursement of the workers' compensation insurance carrier, it is rendered inoperative by the no-fault insurance act (MCL 418.827, 500.3135; MSA 17.237[827], 24.13135).*

13. WORKERS' COMPENSATION — NO-FAULT INSURANCE — REDUCTION OF BENEFITS.

*Workers' compensation benefits must be applied first where workers' compensation and no-fault insurance benefits are paid for the same injury; the amount of the payment by the employer or the workers' compensation insurer is to be deducted from the liability of the no-fault insurance carrier for personal protection insurance benefits (MCL 500.3109[1]; MSA 24.13109[1]).*

14. WORKERS' COMPENSATION — AUTOMOBILES — THIRD-PARTY ACTIONS — SUBROGATION.

*Recovery of workers' compensation benefits for injuries suffered in a motor vehicle accident by an employee in the course of his employment is subsumed within an award of no-fault insurance benefits for the same injuries and adheres to the compensation structure of the no-fault insurance act; because there is no overlap between no-fault personal protection insurance benefits and recovery in a third-party action for tort (except for intentional torts) under the no-fault insurance act, there is no overlap between workers' compensation benefits and a third-party tort recovery under the no-fault act, and without double recovery there is no need for reimbursement of the workers'*

compensation insurance carrier (MCL 418.827, 500.3116, 500.3135; MSA 17.237[827], 24.13116, 24.13135).

OPINION BY WILLIAMS, J.

15. WORKERS' COMPENSATION — AUTOMOBILES — NO-FAULT INSURANCE — SUBROGATION.

The subrogation provision of the Worker's Disability Compensation Act is inapplicable to any third-party tort recovery of noneconomic damages obtained under the no-fault insurance act by a worker injured by an automobile accident in the course of his employment who also receives workers' compensation benefits for his injury (MCL 418.827, 500.3101 et seq.; MSA 17.237[827], 24.13101 et seq.).

16. APPEAL — ISSUES ON APPEAL — STATUTES — CONSTITUTIONAL LAW.

Statutory construction which will dispose of a case must be considered before resolution of the case on a constitutional question.

17. STATUTES — CONSTRUCTION — REPEAL BY IMPLICATION.

The most recent legislative act on a subject will repeal an earlier act on the subject by implication to the extent that they are repugnant and inconsistent, but repeals by implication are not favored.

18. WORKERS' COMPENSATION — AUTOMOBILES — NO-FAULT INSURANCE — SUBROGATION — STATUTES — CONSTRUCTION.

There is a clear and irreconcilable repugnance between the subrogation provision of the no-fault insurance act, which limits the right of a claimant to sue for noneconomic damages and which, by judicial construction and legislative enactment, does not permit reimbursement of the insurer for noneconomic damages recovered from the tortfeasor, and of the Worker's Disability Compensation Act which allows the claimant to bring a third-party tort action for any proximately caused injury, allows general recovery of damages, and permits reimbursement of the insurer for economic and noneconomic damages recovered from the tortfeasor; because the no-fault insurance act is the more recent of the two repugnant acts, the subrogation provision of the Worker's Disability Compensation Act must be construed as repealed by implication by the no-fault insurance act where a worker in the course of his employment is injured by a third-party tortfeasor in an automobile accident (MCL 418.827, 500.3101 et seq.; MSA 17.237[827], 24.13101 et seq.).

19. STATUTES — CONSTRUCTION — CONSTITUTIONAL LAW.

*Courts must construe statutes to give them constitutional effect if possible.*

20. AUTOMOBILES — NO-FAULT INSURANCE — CONSTITUTIONAL LAW — DUE PROCESS — EQUAL PROTECTION.

*The test to determine whether provisions of the no-fault insurance act comport with the Due Process Clause is whether the legislation bears a reasonable relation to a permissible legislative objective; the test to determine whether it comports with the Equal Protection Clause is essentially the same (US Const, Am XIV; Const 1963, art 1, §§ 2, 17; MCL 500.3101 et seq.; MSA 24.13101 et seq.).*

21. AUTOMOBILES — NO-FAULT INSURANCE — LEGISLATIVE OBJECTIVE.

*The permissible legislative objective of the no-fault insurance act is to make whole the seriously injured victims of automobile accidents (MCL 500.3101 et seq.; MSA 24.13101 et seq.).*

22. WORKERS' COMPENSATION — AUTOMOBILES — NO-FAULT INSURANCE — SUBROGATION — CONSTITUTIONAL LAW — EQUAL PROTECTION.

*The arbitrary and unreasonable difference in treatment of victims of automobile accidents who are injured in the course of their employment, whose recovery of noneconomic loss from a third-party tortfeasor may be diminished by subrogation of the workers' compensation insurer under the provisions of the Worker's Disability Compensation Act, and victims who are not injured in the course of their employment, whose recovery for economic and noneconomic loss is under the no-fault insurance act, is based upon the arbitrary distinction of an employment relation which bears no reasonable relation to the permissible legislative purpose of the no-fault insurance act, to make victims of automobile accidents whole; because the operation of the subrogation provision of the Worker's Disability Compensation Act defeats the legislative objective of the no-fault insurance act, the different treatment of victims of automobile accidents on the employment distinction is barred by the Equal Protection Clause (US Const, Am XIV; Const 1963, art 1, § 2; MCL 418.827, 500.3101 et seq.; MSA 17.237[827], 24.13101 et seq.).*

*Johnson, Campbell & Moesta, P.C.,* for plaintiff.

*Freedman, Krochmal & Colman* for defendant Queen.

*Conklin, Maloney & Loesch (Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen,* by *John P. Jacobs,* of counsel) for defendant Moore.

*Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark* (by *Randall D. Bryant)* for defendant Hughes.

LEVIN, J. The issue is whether an employer's or insurer's right under the workers' compensation act to be reimbursed out of any tort recovery by an employee from a third party in respect to the same injury which gave rise to the obligation to pay workers' compensation benefits is modified by the provisions of the no-fault motor vehicle liability act.

We conclude that since the insurer in the instant case seeks reimbursement for payments which substituted for no-fault benefits otherwise payable, there is no right to reimbursement.

We do not agree with Justice WILLIAMS' conclusion that there is "a clear and irreconcilable repugnance" between the no-fault act and the workers' compensation act and "both acts cannot be given simultaneous effect" and that therefore the no-fault act operates to repeal the reimbursement provisions of the workers' compensation act in all cases involving motor vehicle accidents. It is possible to give both acts simultaneous literal effect. The workers' compensation carrier could be permitted reimbursement from "any tort recovery", whether for economic or non-economic loss, although the employee's right to proceed in tort is

limited by the no-fault act.[1]

Nevertheless, we think it appropriate to inquire whether consideration of the legislative policies and judgments embodied in the provisions of both acts indicates a legislative intent that a workers' compensation carrier's reimbursement rights be modified in cases where the no-fault act is also operative.

When an employee is injured in a motor vehicle accident in the course of his employment, his entitlement to compensation for his injuries, from all sources, is governed by the workers' compensation act *and* the no-fault act. His rights and entitlements under each act are affected by his being injured under circumstances which make him subject to the provisions of the other.

Under the workers' compensation act the employee is entitled to statutory compensation and may also seek to enforce the legal liability of a third party.[2] But, by operation of the no-fault act, that legal liability is limited.

Under the no-fault act he is entitled to no-fault benefits.[3] But, once the liability of the no-fault insurer is determined, that liability is reduced by the amount of workers' compensation benefits paid or payable because of the injury.[4]

If the legislative decision, set forth in the no-

[1] Queen's claim that the no-fault act repealed the reimbursement provision of the Worker's Disability Compensation Act is based on a conflict or repugnancy between an earlier and later act.

The insurer points out that the reimbursement provision of the Worker's Disability Compensation Act was amended and re-enacted by the Legislature in the same session that the no-fault act was enacted. 1972 PA 285, 1972 PA 294.

[2] MCL 418.827; MSA 17.237(827).

[3] MCL 500.3135; MSA 24.13135.

[4] *Mathis v Interstate Motor Freight System,* 408 Mich 164; 289 NW2d 708 (1980); MCL 500.3109; MSA 24.13109.

fault act, that no-fault insurers are entitled to reimbursement from third-party tort recoveries only to the extent recovery represents compensation for elements of loss compensated by no-fault benefits is not extended to workers' compensation benefits which substitute for no-fault benefits, the third-party tort recovery of a person injured in a motor vehicle accident in the course of his employment would be reduced by no-fault benefits paid by the workers' compensation carrier, while the third-party tort recovery of a person not injured in the course of his employment would not be reduced.

We are persuaded that had the Legislature considered the acts' application to the case at bar[5]—a motor vehicle accident occurring in the course of employment—it would have explicitly provided that when a workers' compensation carrier provides benefits which would be payable by the no-fault insurer had the accident not occurred in the scope of employment but are instead payable by the workers' compensation carrier because of the no-fault act's mandatory set-off provision, its reimbursement rights are coextensive with those of the no-fault insurer whose liability it replaces and are

---

[5] "We seek to ascertain and give effect to the intention of the Legislature. *Grand Rapids v Crocker,* 219 Mich 178, 182 [189 NW 221] (1922). But, as Karl Llewellyn observed, only infrequently 'a legislative intent with some concrete reality can be uncovered in circumstance or legislative history. For the rest, the court's work is not to *find,* any more than it is with case law. It is to *do,* responsibly, fittingly, intelligently, with and within the given frame.' (Emphasis by author.) Llewellyn, The Common Law Tradition, Deciding Appeals, p 382. Much the same point was made in language quoted approvingly in *Wyandotte Savings Bank v State Banking Comm'r,* [347 Mich 33], pp 40-41 [78 NW2d 612 (1956)]: ' " " 'the intention is to be taken or presumed, according to what is consonant to reason and good discretion.' " ' 1 Kent's Commentaries (14th ed), p 462." *People v McFarlin,* 389 Mich 557, 564-565; 208 NW2d 504; 64 ALR3d 1274 (1973).

Here, as in *McFarlin,* the constructional issue concerns the interrelationship of legislative acts.

thus limited to cases where there is tort recovery for basic economic loss.[6]

That conclusion does not, however, compel total nullification of the workers' compensation carrier's reimbursement rights in cases involving motor vehicle accidents. When the carrier pays benefits which do not substitute for no-fault benefits, because they exceed no-fault benefits in amount or duration, it should be treated like all other workers' compensation carriers and be entitled to reimbursement out of any third-party recovery.

Allowing reimbursement for such benefits would work no discrimination against motor vehicle accident victims who happen to be injured in the course or scope of employment because reimbursement is permitted only for benefits which other motor vehicle accident victims do not receive.

I

Queen was injured in a motor vehicle accident in the course of his employment on January 12, 1976. Great American Insurance Company paid him $4,567 in workers' compensation benefits. Queen claimed benefits from his employer's no-fault insurer. The no-fault insurer subtracted the amounts paid under the workers' compensation act from the benefits otherwise owing under the no-fault act.

Queen then sought to recover from the tortfeasors as permitted by § 3135 of the no-fault act. His claim was settled for $18,500. This sum was paid without notice to Great American.

Great American then brought this cause against Queen and the third-party tortfeasors claiming a lien on the settlement proceeds pursuant to § 827

---

[6] MCL 500.3116; MSA 24.13116.

of the workers' compensation act. The trial judge granted summary judgment in favor of the defendants. The Court of Appeals affirmed per curiam.[7]

## II

An employee's common-law right to proceed in tort against persons other than his employer or co-workers was not altered by the workers' compensation act. An employee may sue such persons for all losses normally recoverable in tort. If he is awarded damages, the employer or workers' compensation carrier is entitled to reimbursement for benefits paid and to a credit against future payments, without regard to whether the recovery is for the same elements of loss compensated by the benefits paid under the statute.

The employee is thus permitted to rest content with a workers' compensation award or to pursue his tort remedy and reimburse the employer or insurer for any amounts received under the workers' compensation act. Because he need not repay more than he recovered in tort, the employee in effect recovers under the more generous of the two systems—tort or workers' compensation—but not both. This was our holding in *Pelkey v Elsea Realty & Investment Co.*[8]

The workers' compensation carrier argues that this case is governed by our decision in *Pelkey.* The circumstances which supported our rationale in *Pelkey,* however, and which exist in all workers' compensation reimbursement cases except those involving motor vehicle accidents occurring after the passage of no-fault, do not obtain here. In

---

[7] *Great American Ins Co v Queen,* 86 Mich App 362; 272 NW2d 659 (1978).

[8] *Pelkey v Elsea Realty & Investment Co,* 394 Mich 485; 232 NW2d 154 (1975).

*Pelkey,* damages recoverable in tort included compensation for all losses required to be compensated by the workers' compensation carrier.

Pelkey was involved in a motor vehicle accident in the course of her employment with Elsea Realty. She sustained a compensable disability and received $3,364.60 in workers' compensation. Pelkey, her husband, and the workers' compensation carrier jointly settled their claim against the third-party tortfeasor for $10,000. $3,000 was allocated to Pelkey's husband for loss of consortium; $3,364.60 was allocated to the workers' compensation carrier as reimbursement and $3,635.40 was allocated to Pelkey for pain and suffering.

After settlement, Pelkey developed psychiatric complications requiring treatment and petitioned for compensation. The WCAB ruled the treatment related to the earlier injury and awarded compensation but determined that the insurer was entitled to a credit equal to Pelkey's tort recovery less the costs of securing that recovery. Pelkey argued that tort recoveries for pain and suffering were not intended to be subject to an insurer's lien based on compensation for economic loss.

We concluded that:

> "[W]hen the Legislature stated that damages recovered by an employee from a third-party tortfeasor for 'personal injuries or death only' could be reached by an insurer, the Legislature meant to include damages resulting from pain and suffering."

We noted that prior to 1952 an injured employee was required to choose between the common-law tort remedy against third parties and the workers' compensation remedy provided by statute and concluded that "[t]he right to reimbursement is justi-

fied by the abrogation of the election of remedies requirement".

The workers' compensation act provides a right to no-fault wage benefits, medical care, and scheduled benefits for specific losses. Where the person whose negligence caused the compensable disability is neither an employer nor a co-worker, the injured employee is also permitted to sue in tort. In such an action the employee is entitled to recover all damages normally recoverable in tort—wage loss, medical expenses, and pain and suffering. The third party's liability is not reduced by amounts recovered under the workers' compensation system.

In most cases, the amounts repaid to the insurer will represent payments from the third party for elements of damage already compensated by the insurer—medical expenses, wage loss, and pain and suffering in the case of an employee receiving scheduled benefits for a specific loss. In such cases the employee is merely reimbursing the insurer out of a double recovery.

*Pelkey* presented a different factual circumstance. There the tort liability of the third party was settled before the full extent of injury was known and the prediction of economic damages was inaccurate. The settlement awarded reimbursement for economic damages already paid by the workers' compensation carrier; it did not anticipate that further treatment would be required. The real question in *Pelkey* was which party should bear the consequences of the recognized risks of the tort system which ascertains damages at the time of trial and does not permit modification thereafter.

In eliminating the requirement that the employee choose between suing the third party in

tort and claiming benefits from the employer under the act, and in providing that the insurer is entitled to reimbursement from any tort recovery, the Legislature carried forward the policy of the earlier act that a worker injured by a third party in the course of his employment should be permitted to recover benefits provided under the act or damages recoverable at common law, but not both. The new provisions made it possible for the employee to recover compensation under whichever scheme provided greater benefits; it was not intended to allow the employee to retain the best of both schemes.

In *Pelkey* we thus concluded that the insurer was entitled to reimbursement even out of that portion of the tort recovery denominated for pain and suffering. In this manner Pelkey was required to absorb the disadvantages as well as the advantages of her right to pursue a third-party tort recovery.

*Pelkey* holds that an employee who recovers damages in tort is not entitled to any greater compensation than a non-employee injured under similar circumstances. Thus, upon securing her third-party recovery, Pelkey was required to reimburse the insurer for amounts already paid and to grant it a credit for amounts to be paid in the future. She was left with no less than her total tort recovery since she was not required to reimburse the carrier for any amounts not actually received.

Application of *Pelkey* to this case would require that to the extent Queen recovers outside the workers' compensation system he be permitted to retain no further compensation than that received

by a motor vehicle accident victim not injured in the course of his employment.[9]

## III

The no-fault act creates entitlement to statutory benefits and additionally abrogates common-law tort liability for below threshold non-economic loss and, in most cases, economic loss compensated by no-fault benefits.

No-fault benefits consist of medical expenses unlimited in amount and duration and work loss or survivor's benefits for three years. These compensate purely economic elements of damage. Persons severely injured may sue the third-party tortfeasor for work loss exceeding that compensated by the no-fault carrier, for non-economic loss where injury is severe, and for basic economic loss if the driver is denied tort immunity under the act.

The no-fault insurer's right to reimbursement out of tort recoveries from third parties is governed by § 3116 of the no-fault act and this Court's decision in *Workman*.[10] The right to reimbursement extends only to those atypical cases where

[9] "The essential purpose of the 1952 amendment to the dual liability provision of the workers' compensation act [1952 PA 155] was to enable workers who had received no-fault compensation under that act to obtain the benefit of a larger amount recoverable in tort from a third party at fault. It was not intended that the worker would receive *both* the no-fault compensation and a tort recovery * * *.

"The purpose was to put the worker in as good a position as a person injured under similar circumstances who is not entitled to workers' compensation, not to put him in a considerably better position. It was sought to accomplish that purpose in a manner which would tend to reduce the overall cost of workers' compensation and avoid duplicative recoveries." *Franges v General Motors Corp*, 404 Mich 590, 623-624; 274 NW2d 392 (1979) (opinion of LEVIN, J.) (emphasis in original).

[10] *Workman v Detroit Automobile Inter-Insurance Exchange*, 404 Mich 477; 274 NW2d 373 (1979).

tort recovery is permitted for elements of damage compensated by no-fault benefits; there is no right to reimbursement unless there is duplicate recovery.[11]

The no-fault act also provides that in determining the amount owed by a no-fault insurer, "Benefits provided or required to be provided under the laws of any state * * * shall be subtracted from the personal protection insurance benefits otherwise payable for the injury".[12] In *Mathis* (see fn 4), we determined that workers' compensation benefits are required to be set off under this provision.

## IV

Had the Legislature intended that a worker injured in a motor vehicle accident receive only the compensation received by other workers incurring similar disabilities in accidents not involving motor vehicles, it could have so provided by excluding persons injured in the course of their employment from the no-fault act. In *Mathis,* we held that workers' compensation is not the employee's exclusive remedy against his employer and that the employer's no-fault carrier is also liable for benefits under the no-fault act.

The decision to accord workers benefits under

---

[11] Section 3116 of the no-fault act provides in part:

"A subtraction from or reimbursement for personal protection insurance benefits paid or payable under this chapter shall be made only if recovery is realized upon a tort claim arising from an accident occurring outside this state, a tort claim brought within this state against the owner or operator of a motor vehicle with respect to which the security required by section 3101(3) and (4) was not in effect, or a tort claim brought within this state based on intentionally caused harm to persons or property, and shall be made only to the extent that the recovery realized by the claimant is for damages for which the claimant has received or would otherwise be entitled to receive personal protection insurance benefits." MCL 500.3116(2); MSA 24.13116(2).

[12] MCL 500.3109; MSA 24.13109.

the no-fault act was made in the context of their common-law rights being limited under the no-fault act as are the rights of other motor vehicle accident victims. Employees, like all others, are not permitted to sue for below-threshold economic or non-economic damages.

Thus, we are presented with a legislative judgment that persons injured in motor vehicle accidents in the course of their employment should receive the compensation and have the limited right to tort recovery of other motor vehicle accident victims.

Permitting employees to receive full no-fault benefits is one thing, but permitting such recovery in addition to workers' compensation benefits would be quite another. The Legislature therefore provided that workers' compensation benefits are to be subtracted from no-fault benefits otherwise payable. The provision which requires this subtraction applies to all benefits paid under state or federal law and expresses a legislative decision to forbid double recovery under government programs and to allocate the cost of providing the minimum level of benefits mandated by the no-fault act as much as possible to other sources. The provision requiring set-off appears to be directed to the allocation of costs between insurance systems and the avoidance of double recovery and does not appear to be intended to provide motor vehicle accident victims injured in the course of their employment with less compensation than motor vehicle accident victims not so injured.

The Legislature provided that no-fault insurers are entitled to reimbursement from third-party tort recoveries only to the extent recovery represents compensation for elements of loss compensated by no-fault benefits. The Legislature's deci-

sion to deny reimbursement rights unless there is
double recovery expresses a judgment that tort
recovery for non-economic loss and excess eco-
nomic loss should not be reduced by no-fault eco-
nomic loss benefits. If that decision is not extended
to workers' compensation benefits which substitute
for no-fault benefits, the third-party tort recovery
of a person injured in a motor vehicle accident in
the course of his employment would be reduced by
so much of the no-fault benefits "otherwise pay-
able" as are paid by the workers' compensation
carrier, while the third-party tort recovery of a
person not injured in the course of his employ-
ment would not be reduced.

We are persuaded that the Legislature intended
that persons injured in motor vehicle accidents in
the course of their employment be entitled to the
same compensation received by all other motor
vehicle accident victims and that workers' compen-
sation benefits be subtracted from no-fault benefits
to prevent double recovery and to allocate costs to
the other benefit systems, and that the Legislature
did not intend that the third-party recovery of a
person injured in the course of his employment be
subject to greater subrogation claims in favor of
insurers simply because a portion of the benefits
otherwise payable under the allowable expense,
work loss, and survivor's loss sections are paid by
a different source pursuant to the section requir-
ing subtraction of benefits provided under state
law.

Our decision in *Pelkey* requires that the em-
ployee who is permitted to sue a third party in
tort be permitted to receive no more than one who
is injured under similar circumstances but not in
the course of his employment. It is fully consistent
with that holding to conclude that the workers'

compensation carrier's right to reimbursement for benefits which substitute for no-fault benefits is governed by § 3116 of the no-fault act.

## V

Our conclusion is not based on a constitutional right to be made whole or to retain damages recovered in tort unless there has been a double recovery. The constitutionality of the legislative scheme which allows reimbursement of the workers' compensation carrier for economic benefits from tort recoveries for pain and suffering was upheld in *Pelkey* and I adhere to the view expressed in my opinion in *Workman* that such reimbursement schemes are rational and constitutional.

Rather, our conclusion is based on a perception that the Legislature intended the workers' compensation carrier to substitute for the no-fault insurer to the extent that workers' compensation benefits substitute for no-fault benefits otherwise payable. Thus, the payment of workers' compensation benefits which do not substitute for no-fault benefits, because they exceed no-fault benefits in amount or duration, gives rise to a right to reimbursement from third-party tort recoveries in the same manner as the payment of workers' compensation benefits for non-motor vehicle related injuries.

In this case, the carrier seeks reimbursement for medical treatment which would be compensable under the no-fault act—there is no right to reimbursement for such payments.

COLEMAN, C.J., and KAVANAGH and FITZGERALD, JJ., concurred with LEVIN, J.

COLEMAN, C.J. *(concurring in the result).* I concur in the even-handed opinion of my Brother LEVIN, although I remain convinced that "corrective legislative action is advisable, if not imperative". *Matter of Granger v Urda,* 44 NY2d 91, 99; 404 NYS2d 319, 322; 375 NE2d 380, 383 (1978).

RYAN, J. *(concurring in the result).* We are asked to resolve an *apparent* conflict between the Worker's Disability Compensation Act of 1969 (WDCA) and the no-fault insurance act.

The specific issue is whether the employer's workers' compensation insurer is entitled to reimbursement from the employee's tort recovery against the third-party tortfeasor for "noneconomic loss", which recovery is sanctioned by the no-fault act, MCL 500.3135, subds (1), (2)(b); MSA 24.13135, subds (1), (2)(b). I agree with Justice WILLIAMS that the answer is "no", but write separately to emphasize that my agreement rests upon a different rationale.[1]

The facts of the case are fully detailed in the opinion of my colleagues.

Earlier this year we addressed a problem created by the intersection of the WDCA and the no-fault act in an analogous setting—employees were injured in motor vehicle mishaps in the course of their employment. *Mathis v Interstate Motor Freight System,* 408 Mich 164, 183, 187; 289 NW2d 708 (1980). We held there that

"an employee who suffers accidental bodily injury in

---

[1] Sensitivity to traditional bench and bar objection to multiple opinions from this Court seems less compelling with respect to this issue of first impression which has divided panels of the Court of Appeals, compare *Reliance Ins Co v Messina Trucking, Inc,* 83 Mich App 159; 268 NW2d 328 (1978), and *Great American Ins Co v Queen,* 86 Mich App 362; 272 NW2d 659 (1978), with *Wrobel v Wayne County Road Comm,* 79 Mich App 484; 261 NW2d 58 (1977), and involves construction of the relatively new no-fault act.

the course of his employment while occupying a motor
vehicle owned by the employer is entitled to collect no-
fault benefits from the no-fault insurer of the employ-
er's vehicle, and is not limited to workers' compensation
as his sole remedy."

We also held that, under § 3109(1) of the no-fault
act, the

"workers' compensation benefits must be set off
against the no-fault benefits otherwise due."

The essential difference between *Mathis* and this
case is the involvement of a third-party tortfeasor
from whom the employee obtained a recovery in
tort in addition to collecting his no-fault and work-
ers' compensation benefits.[2] The existence of the
third-party tortfeasor in this case implicates the
provisions of the WDCA and no-fault act that
concern the right of the injured party to bring an
action in tort as distinguished from an administra-
tive claim for the statutory benefits.

The WDCA provides:

"In an action to enforce the liability of a third party,
the plaintiff may recover any amount which the em-
ployee or his dependents or personal representative
would be entitled to recover in an action in tort. Any
recovery against the third party for damages resulting
from personal injuries or death only, after deducting
expenses of recovery, shall first reimburse the employer
or carrier for any amounts paid or payable under this
act to date of recovery and the balance shall forthwith
be paid to the employee or his dependents or personal
representative and shall be treated as an advance pay-
ment by the employer on account of any future pay-

---

[2] The benefits were coordinated as required by § 3109(1) of the no-
fault act.

ments of compensation benefits." MCL 418.827(5); MSA 17.237(827)(5).

The no-fault act provides:

"(1) A person remains subject to tort liability for noneconomic loss caused by his ownership, maintenance or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function or permanent serious disfigurement.

"(2) Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance or use within this state of a motor vehicle with respect to which the security required by subsections (3) and (4) of section 3101 was in effect is abolished except as to:

\* \* \*

"(b) Damages for noneconomic loss as provided and limited in subsection (1).

"(c) Damages for allowable expenses, work loss and survivor's loss as defined in sections 3107 to 3110 in excess of the daily, monthly and 3 year limitations contained in those sections. The party liable for damages is entitled to an exemption reducing his liability by the amount of taxes that would have been payable on account of income the injured person would have received if he had not been injured." MCL 500.3135; MSA 24.13135.

What we said in *Mathis* with respect to the separate purposes of the WDCA and the no-fault act bears repetition here and is the basis for the analysis underlying my conclusion today:

"The Worker's Disability Compensation Act (WDCA) and the no-fault insurance act are complete and self-contained legislative schemes addressing discrete problems. Neither act refers expressly to the other.

"The WDCA provides a substitute for common-law tort liability founded upon an employer's negligence in failing to maintain a safe working environment. Compensation under this act is for industrial injuries aris-

ing out of and in the course of the injured person's employment. Compensation is paid by the employer or the employer's workers' compensation insurer under an indemnity contract.

"The no-fault act provides a substitute for common-law tort liability based upon the ownership or operation of a motor vehicle. Under this act, victims of motor accidents receive insurance benefits from a no-fault insurance carrier as compensation for their injuries. *Shavers v Attorney General,* 402 Mich 554, 578-579; 267 NW2d 72 (1978)." *Mathis, supra,* 179.

Under both acts, the primary purpose is to provide benefits to the injured party for *economic* injury. As Justice MOODY observed in *Mathis,* "both benefits are payable to compensate the recipient for the *same economic injuries* suffered as a result of the accident".[3] The two statutes differ, however, as to the manner in which the injured party may proceed against a third-party tortfeasor.

Section 827(5) of the WDCA, set out above, permits the injured party to recover "any amount" from the third party, including amounts that would duplicate workers' compensation benefits. "[T]ort recovery under the Worker's Disability Compensation Act is for all damages, economic and noneconomic * * *." *Workman v Detroit Automobile Inter-Insurance Exchange,* 404 Mich 477, 511; 274 NW2d 373 (1979). This duplication is eliminated, however, by the statutory requirement for reimbursement of the payer of workers' compensation benefits out of the recovery obtained from the third-party tortfeasor. MCL 418.827(5); MSA 17.237(827)(5). Under the WDCA, therefore, when an employee's injury arising in the course of employment is attributable to a third party who is neither the employer nor a coemployee, the work-

[3] *Mathis v Interstate Motor Freight System,* 408 Mich 164, 190 (separate opinion).

ers' compensation benefits can be made essentially irrelevant: the employee's entire recovery is obtainable from the third party on a common-law tort theory.

The no-fault scheme, however, is different. Under the no-fault act, recovery from third parties based upon tort is limited to those injuries that fall outside the coverage of no-fault benefits: noneconomic loss and economic loss exceeding no-fault benefits. Thus, there is no duplication of compensation and, therefore, no need to reimburse the no-fault insurance carrier. This was our holding in *Workman, supra,* which is now codified.

"A subtraction or reimbursement shall not be due the claimant's insurer from that portion of any recovery to the extent that recovery is realized for noneconomic loss as provided in section 3135(1) and (2)(b) or for allowable expenses, work loss, and survivor's loss as defined in sections 3107 to 3110 in excess of the amount recovered by the claimant from his or her insurer." MCL 500.3116(4); MSA 24.13116(4).[4]

Comparison of the WDCA and the no-fault act "indicate[s] that the Legislature, although by different methods, in both acts provided against double recovery". *Workman, supra,* 511. It appears, therefore, that prevention of double recovery is a legislative mandate informing both acts, and indeed both acts as "complete and self-contained legislative schemes" achieve this purpose.

In the case before us, however, we are faced with circumstances in which neither act can be applied as a complete and self-contained program because here they are jointly operative. Moreover,

---

[4] As to harm *intentionally* caused by third parties, the no-fault act operates like the WDCA—duplicative recovery and reimbursement. MCL 500.3135(2)(a); MSA 24.13135(2)(a); MCL 500.3116(2); MSA 24.13116(2).

we are prevented by statute and case law, as will be explained, from declaring that only one of the two acts shall govern the facts of this case.

As Justice LEVIN correctly implies, the tort liability of third parties in cases like this is determined solely by § 3135 of the no-fault act.[5] Paragraph 2 of that section provides in pertinent part:

> "*Notwithstanding any other provision of law,* tort liability arising from the ownership, maintenance or use within this state of a motor vehicle with respect to which the security required by subsections (3) and (4) of section 3101 was in effect is abolished except as [herein provided]." MCL 500.3135(2); MSA 24.13135(2) (emphasis added).

"[A]ny other provision of law" unquestionably encompasses the WDCA and, in particular, § 827(5), which permits an injured employee to bring an action in tort against the third-party tortfeasor for "any" damages. Consequently, to the extent that § 827(5) of the WDCA sanctions tort actions to redress employees' injuries arising from the use of a motor vehicle, it is rendered inoperative by the no-fault act.[6] The WDCA, however, is not entirely excluded from the compensation scheme. By virtue of our construction of § 3109(1) of the no-fault act in *Mathis, supra,* when workers' compensation and no-fault benefits are both paid out for the same injury, the workers' compensation benefits must be applied first.

> "The responsibility for * * * benefits rests *first* on the employer or workers' compensation insurer, and the

---

[5] See Justice LEVIN's opinion, p 86.

[6] This appears to foreclose recovery for noneconomic loss incurred by persons who have not suffered "death, serious impairment of body function or permanent serious disfigurement", MCL 500.3135(1); MSA 24.13135(1).

amount of that payment is to be deducted from the liability of the [no-fault] personal protection insurance carrier." *Mathis, supra,* 183.

Consequently, the workers' compensation benefits will always constitute a portion of the recovery.

What is significant about the foregoing analysis is that the workers' compensation benefits are subsumed within the no-fault benefit award. In other words, although the source of the recovery is attributable in part to workers' compensation benefits, the recovery itself adheres to the compensation structure of the no-fault act.[7] Since it is established that there is no overlap between no-fault personal protection benefits and tort recovery under § 3135 of the no-fault act (save for intentional torts, which are not in issue here), it follows that there is no overlap between workers' compensation benefits and § 3135 recovery. The legislative

---

[7] For instance, if the plaintiff is entitled to $50 in no-fault benefits and $20 in workers' compensation benefits, he will receive $30 from the no-fault insurance carrier ($50 with a $20 setoff) and $20 from the workers' compensation insurance carrier for a total of $50, the amount of no-fault benefits.

As in *Mathis,* we are not presented here with the unlikely situation in which workers' compensation benefits exceed no-fault personal protection benefits. Thus, my opinion, unlike Justice LEVIN's, does not speak to that occurrence, which I consider to be remote. Workers' compensation benefits are not as generous as no-fault personal protection benefits because they are intended to serve different purposes. In contrast to no-fault benefits, which are intended to compensate economic injuries, *Mathis, supra,* 179; *Shavers v Attorney General,* 402 Mich 554, 578-579; 267 NW2d 72 (1978), workers' compensation benefits are intended to compensate only those economic injuries "which produce disability and thereby presumably affect earning power". 1 Larson's Workmen's Compensation Law, § 2.40, p 10. Furthermore, as Professor Larson observed:

"A [workers'] compensation system, unlike a tort recovery, does not pretend to restore to the claimant what he has lost; it gives him a sum which, added to his remaining earning ability, if any, will presumably enable him to exist without being a burden to others.

"If our compensation theory is correct, then the amount of compensation awarded may be expected to go not much higher than is necessary to keep the worker from destitution. This is indeed so." *Id.,* § 2.50, p 11 (footnote omitted).

mandate is for reimbursement where there is double recovery. Without double recovery, there is no need for reimbursement.

In further support of this view, I refer again to paragraph 5 of § 827 of the WDCA.

"In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or his dependents or personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or carrier for any amounts paid or payable under this act to date of recovery and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payments of compensation benefits."

On account of the effective abrogation of the first sentence of the quoted paragraph by the operation of § 3135 of the no-fault act, as explained above, it is only logical to conclude that the second sentence, which provides for reimbursement of the workers' compensation carrier, and which was enacted as part of a *self-contained* program of compensation (for injuries due to the tortious conduct of third parties) *in conjunction with the cause of action allowed by the immediately preceding sentence,* is also effectively abrogated by § 3135.

Unlike my colleagues, I find *Pelkey v Elsea Realty & Investment Co,* 394 Mich 485, 492; 232 NW2d 154 (1975), to be inapposite to this case. The *Pelkey* Court interpreted § 827(5) of the WDCA reproduced above and held that:

"When the Legislature stated that damages recovered

by an employee from a third-party tortfeasor for 'personal injuries or death only' could be reached by an insurer, the Legislature meant to include damages resulting from pain and suffering."

Without arguing the merits of the holding, and without calling specific attention to the peculiar circumstances attending that case, it is sufficient to note that *Pelkey* considered *only* the WDCA; that Court did not construe the WDCA and the no-fault act together, as we are obliged to do here, because the no-fault act was not in effect when the cause of action arose. Accordingly, I do not find *Pelkey* instructive with respect to the question we address today.

For the foregoing reasons, I concur in the result reached by my Brother WILLIAMS. That result obviates the need to consider constitutional issues.

WILLIAMS, J. *(for affirmance).* This matter requires us to consider whether, when an employee is injured in a motor vehicle accident during the course of employment, the employer's Worker's Disability Compensation Act insurer is entitled to reimbursement of economic loss benefits out of the employee's recovery of no-fault act noneconomic loss from the tortfeasor.

The issue is presented because two legislative schemes are applicable to such an injury: the Worker's Disability Compensation Act (WDCA), and the no-fault insurance act (NFA). Each act is a complete and largely self-contained scheme addressing discrete problems; neither act expressly refers to the other. In the limited area of overlap —the factual situation of the instant case—it must be determined whether the WDCA's reimbursement provision penetrates the NFA's scheme of reparations.

The WDCA provides a substitute for common-law tort liability founded upon an employer's negligence in failing to maintain a safe working environment. Recovery under the WDCA is intended to compensate employment-related industrial injuries and is paid by either the employer or the employer's WDCA insurance carrier under an indemnity contract. The WDCA provides the only source of reparation for an injured worker unless that injury was proximately caused by a force not within the employer's control, e.g., a defective machine. In such exceptional circumstances, the compensation carrier may be subrogated to the injured employee's economic and noneconomic third-party recovery. *Pelkey v Elsea Realty & Investment Co,* 394 Mich 485; 232 NW2d 154 (1975).

The NFA provides a substitute for common-law tort liability based upon the ownership or operation of a motor vehicle. Under this act, victims of motor vehicle accidents receive insurance benefits from a no-fault insurance carrier as compensation for their injuries. *Shavers v Attorney General,* 402 Mich 554; 267 NW2d 72 (1978). If the injured party is an employee, the employer's no-fault carrier is liable to pay personal injury protection (PIP) benefits. MCL 500.3114(3); MSA 24.13114(3). Again, within the NFA, the only source of reparations for the injured victim is the PIP insurance unless the injury is one causing "death, serious impairment of body function or permanent serious disfigurement".[1] In such exceptional circumstances, the law allows the accident victim to sue the third-party tortfeasor, but only for noneconomic losses; in such a case the no-fault carrier who has paid PIP benefits is *not* entitled to reimbursement from this third-party noneconomic recovery. *Workman v De-*

---

[1] MCL 500.3135; MSA 24.13135.

*troit Automobile Inter-Insurance Exchange,* 404
Mich 477; 274 NW2d 373 (1979).

The issue in this case is whether the WDCA
carrier can employ his WDCA reimbursement enti-
tlement against an NFA injured party's NFA non-
economic recovery from the tortfeasor. We hold
that the insurer is not entitled to reimbursement
under these circumstances. The Court of Appeals
is affirmed.

I

On January 12, 1976, defendant Peter Queen, an
Oakland County deputy sheriff, was driving a pa-
trol car in the course of his employment when he
was struck by codefendant Patricia Moore's on-
coming vehicle. Deputy Queen's serious injuries
were aggravated when his automobile was subse-
quently struck from behind by another vehicle
driven by codefendant Michael Hughes.

Plaintiff Great American Insurance paid work-
ers' compensation benefits totaling $4,567 to Dep-
uty Queen in accordance with its contract with
Oakland County. Pursuant to MCL 500.3114(3);
MSA 24.13114(3), Deputy Queen also collected cer-
tain no-fault benefits for excess economic losses
from the insurer of the Oakland County vehicle he
was operating at the time of the accident; these
losses were not covered by the Great American
workers' compensation policy. He then sought to
recover from the third-party tortfeasors, defen-
dants Moore and Hughes, for his noneconomic
losses, pursuant to MCL 500.3135(1); MSA
24.13135(1). The case was settled for a total of
$18,500. Neither auto insurance company notified
Great American of their no-fault disbursements to
Queen.

Great American thereafter filed suit against Deputy Queen, Moore, and Hughes under the Worker's Disability Compensation Act, MCL 418.827; MSA 17.237(827), based upon a purported lien against any third-party payment made to Queen as a result of an automobile accident.

On October 31, 1977, the trial judge granted summary judgment in favor of all three defendants, finding that Great American's lien was invalid and unenforceable. The Court of Appeals affirmed the trial court in a per curiam opinion rendered October 3, 1978. *Great American Ins Co v Queen*, 86 Mich App 362; 272 NW2d 659 (1978).

This Court granted leave to appeal, 405 Mich 823 (1979). Oral argument was conducted on October 2, 1979.

## II

In construing the statutory schemes set up by the WDCA and the NFA it is useful to compare the respective mechanisms employed to "make whole" the injured claimant.

Under the NFA, an employee who is injured in a work-related automobile accident has recourse against the employer's no-fault carrier by virtue of MCL 500.3114(3); MSA 24.13114(3):[2]

"An employee, his spouse, or a relative of either domiciled in the same household, who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer shall receive personal protection insurance benefits to which he is entitled from the insurer of the furnished vehicle."

[2] It is noted that the Legislature has amended this statutory provision. 1977 PA 53. The amendment, however, does not affect the decision in this case.

If the employee is seriously injured, and the accident is the result of the negligence of a third party who is not a coemployee, MCL 500.3135; MSA 24.13135, confers a right to sue for noneconomic damages only:

"(1) A person remains subject to tort liability for noneconomic loss caused by his ownership, maintenance or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function or permanent serious disfigurement.

"(2) Notwithstanding any other provision of *law, tort liability* arising from the ownership, maintenance or use within this state of a motor vehicle * * * *is abolished except as to:*

*          *          *

"(b) *Damages for noneconomic loss* as provided and limited in subsection (1)." (Emphasis added.)

In the event that the injured employee realizes a recovery against the third-party tortfeasor for NFA noneconomic losses, the process of being "made whole" will comprise both a PIP recovery from the employer's NFA carrier, and a noneconomic recovery from the tortfeasor.

PIP carriers who had made payments to injured employees would then invoke MCL 500.3116; MSA 24.13116, which stated:[3]

"A subtraction from personal protection insurance benefits shall not be made because of the value of a claim in tort based on the same accidental bodily injury. *However, after recovery is realized upon a tort claim, a subtraction shall be made to the extent of the recovery* * * *." (Emphasis added.)

This statute was before the Court in *Workman,*

---

[3] See fn 2, *supra.*

*supra*. Noting the "apparent and patent absurdity"[4] of granting a limited tort recovery in MCL 500.3135, then effectively taking away any tort recovery under MCL 500.3116, we held:[5]

"[A]n insurance carrier * * * is entitled to reimbursement from the tort recovery of a person injured as a result of a motor vehicle accident *only if, and to the extent that, the tort recovery includes damages for losses for which personal injury protection benefits were paid*. Thus, since § 3135 abolishes tort remedy for losses covered under the personal injury protection insurance provisions of the act, *an injured plaintiff should recover nothing for which the insurance carrier will have a right of reimbursement* under § 3116." (Emphasis added.)

*Workman* thus stands for the proposition that the employer's PIP carrier cannot be reimbursed from the employee's noneconomic recovery against the third-party tortfeasor.

In contrast to this NFA reparations scheme is the process to be followed in WDCA by a person injured in the course and scope of employment. Entitlement to compensation is provided by MCL 418.301; MSA 17.237(301):

"(1) An employee, who receives a personal injury arising out of and in the course of his employment by an employer who is subject to the provisions of this act, at the time of such injury, shall be paid compensation * * *."

The injured worker is not foreclosed by the WDCA from seeking collateral recovery. A right of action against third parties is expressly conferred by MCL 418.827(1); MSA 17.237(827)(1):

---

[4] *Workman v DAIIE, supra,* 404 Mich 509.

[5] *Workman v DAIIE, supra,* 404 Mich 510.

"(1) Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than a natural person in the same employ or the employer to pay damages in respect thereof, *the acceptance of compensation benefits* or the taking of proceedings to enforce compensation payments *shall not act as an election of remedies but the injured employee* or his dependents or personal representative *may also proceed to enforce the liability of the third party for damages* in accordance with the provisions of this section." (Emphasis added.)

Once a recovery on a third-party claim has been realized, the WDCA subrogation section becomes applicable. In pertinent part, it reads:

"(5) In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or his dependents or personal representative would be entitled to recover in an action in tort. *Any recovery against the third party for damages resulting from personal injuries or death only,* after deducting expenses of recovery, *shall first reimburse the employer or carrier for amounts paid or payable under this act* to date of recovery and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payments of compensation benefits." (Emphasis added.)

In light of these parallel systems of reparations, the question is whether § 827(5) of the WDCA and our prior opinion in *Pelkey, supra,* overcome the more recent enactment of § 3135 of the NFA and our opinion in *Workman, supra.*

Defendants argue strenuously that the conflicts between the NFA and the WDCA require a finding of repeal by implication. Since we are directed by *Ashwander v Tennessee Valley Authority,* 297 US

288; 56 S Ct 466; 80 L Ed 688 (1936), to consider nonconstitutional issues which will dispose of a case before resolving the case on a constitutional basis,[6] we first address defendants' claim that statutory construction precludes a WDCA carrier's subrogation from the injured claimant's third-party recovery.

There is little doubt that the most recent legislative pronouncement in a given area will repeal an earlier act to the extent that the two pieces of legislation are repugnant and inconsistent, despite the general rule that repeals by implication are not favored in the law.[7]

Considering the vastly different overall impact in this area of the NFA and the WDCA, we conclude that there is a direct repugnance. This comprehensive impression of repugnance is reinforced by specifically recalling that the NFA allows the employee to sue for recovery only for "death, serious impairment of body function or permanent serious disfigurement", whereas the WDCA allows a third-party suit for any type of proximately caused injury; by specifically recalling that the NFA allows only noneconomic recovery, whereas the WDCA allows general recovery; and by specifically recalling that the NFA disallows the insurer any reimbursement from the employee's recovery, whereas the WDCA allows the insurer reimbursement, both economic and noneconomic (pain and suffering), from the employee's recovery. In short, the repugnance appears strong.

The rule of statutory construction in cases of

---

[6] See also *Warren Twp v Raymond,* 291 Mich 426; 289 NW 201 (1939); *Wayne Circuit Judges v Wayne County,* 15 Mich App 713; 167 NW2d 337 (1969), aff'd *(On Rehearing)* 386 Mich 1; 190 NW2d 288 (1971).

[7] *Locke v Macomb County,* 31 Mich App 22; 187 NW2d 500 (1971), aff'd 387 Mich 634; 199 NW2d 166 (1972).

conflict between two legislative acts permits a finding of repeal by implication only where the repugnancy is clear and irreconcilable, and both acts cannot be given simultaneous effect. We find a clear and irreconcilable repugnance between the NFA and § 827(5) of the WDCA. This is so because the reimbursement section of the WDCA was enacted as 1952 PA 155 and recodified as 1969 PA 317. The NFA was promulgated by 1972 PA 294. Accordingly, because of this patent conflict, statutory construction mandates a repeal by implication of MCL 418.827(5).

Further, even if we were to hold that an examination of the pertinent passages of the acts did not yield an implicit repealer, we would nonetheless be compelled to find a repeal by implication because to permit § 827(5) to stand in the face of the limited tort recovery under the NFA would result in the creation of an unconstitutional classification, as discussed in Part III. We do not believe that the Legislature, in enacting the WDCA and the NFA, intended such a result.

## III

Our obligation in reviewing legislative acts is to give them constitutional effect if possible. Accordingly, we seek a reading of each statute which avoids unconstitutionality. In the instant case, we are compelled to hold that the reimbursement provision of the WDCA has been superseded by the enactment of the NFA. A contrary resolution is unacceptable because it would require effectuation of a provision which violates the constitutional guarantee of equal protection of the laws. Const 1963, art 1, § 2.

This Court in *Shavers, supra,* enunciated the

test for equal protection and due process in construing the NFA:[8]

"The test to determine whether legislation enacted pursuant to the police power comports with due process is whether the legislation bears a reasonable relation to a permissible legislative objective. * * *

"The test to determine whether a statute enacted pursuant to the police power comports with equal protection is, essentially, the same."

The legislative objective of the NFA is to make whole the seriously injured automobile accident victim. This Court unanimously found in *Shavers, supra,* that such was a permissible legislative objective. However, this objective is frustrated as a result of the interplay between the NFA and MCL 418.827(5), which results in the creation of two arbitrary classes of similarly situated individuals, *i.e.,* automobile accident victims.

The first class is comprised of automobile accident victims who are *not injured in the course and scope of their employment.* These automobile accident victims are made whole by seeking economic loss benefits from their own PIP carriers and noneconomic losses from the third-party tortfeasor. By virtue of *Workman, supra,* and the recent legislative amendment of MCL 500.3116, the PIP carrier is not entitled to reimbursement from the third-party recovery.[9]

The second class is composed of automobile accident victims who *are injured in the course and scope of their employment.* These victims similarly recover economic loss benefits.[10] However, in suits

---

[8] *Shavers, supra,* 402 Mich 612-613.

[9] 1978 PA 461.

[10] The employee injured in an automobile accident may recover economic losses from two sources: the WDCA carrier, pursuant to

against the third-party tortfeasor, the employee-victims find that, unlike their similarly situated counterparts, MCL 418.827(5) authorizes a lien in favor of the WDCA carrier against any tort recovery. Despite the fact that both classes are similarly situated, MCL 418.827(5) treats the latter class so differently, by diminishing their net recovery through WDCA subrogation, that the permissible legislative objective is frustrated.[11]

This diverse, unreasonable treatment of similarly situated members of a class solely because of the arbitrary presence or absence of an employment relationship bears no reasonable relationship to the recognized and permissible purpose of the NFA, to render injured accident victims whole. Such contingency constitutes an arbitrary and unreasonable variance in the treatment of one natural class—seriously injured accident victims—and is, therefore, barred by the constitutional guarantee of equal protection.[12] Const 1963, art 1, § 2.

MCL 418.301, and the employer's PIP carrier, pursuant to MCL 500.3114(3). However, there is no *double* recovery because MCL 500.3109(1); MSA 24.13109(1) requires a setoff of the WDCA benefits against the NFA benefits otherwise due. This setoff was found constitutional in *Mathis v Interstate Motor Freight System,* 408 Mich 164; 289 NW2d 708 (1980).

[11] *Cf. Bowser v Jacobs,* 36 Mich App 320; 194 NW2d 110 (1971). *Bowser* involved an injured employee's claim against the Michigan Motor Vehicle Accident Claims Fund. The claim was initially denied because MCL 257.1129; MSA 9.2829 precludes recovery against the MVACF if any workers' compensation benefits are payable as a result of the injury. The *Bowser* Court held MCL 257.1129 unconstitutionally discriminatory.

[12] The Court of Appeals utilized this equal protection analysis in finding MCL 418.827(5) unconstitutional in this case, *Great American Ins Co, supra;* see also *Reliance Ins Co v Messina Trucking, Inc,* 83 Mich App 159; 268 NW2d 328 (1978). The appeals Court in *Wrobel v Wayne County Road Comm,* 79 Mich App 484; 261 NW2d 58 (1977), reached a contrary result, relying on our decision in *Pelkey, supra.* We distinguish *Pelkey* because it applies exclusively to cases within the WDCA milieu. It has no precedential value where the collateral claim for benefits arises from the NFA.

## IV

We hold today that, in the context of the interplay between the NFA's restrictive third-party recovery and the WDCA's nonrestrictive subrogation provision, a WDCA insurance carrier is not entitled to reimbursement of economic loss benefits out of the employee's recovery of NFA noneconomic loss from the tortfeasor. We believe that the Legislature intended that the NFA should repeal inconsistent segments of the WDCA. A contrary reading of legislative intent is unacceptable because it would require a violation of the constitutional equal protection guarantee. Accordingly, we are compelled to conclude that MCL 418.827(5) is inapplicable to any recovery obtained under the pertinent provisions of the NFA.

The Court of Appeals is affirmed. No costs, a public issue being involved.

BLAIR MOODY, JR., J., concurred with WILLIAMS, J.